Mary PRESTON, Respondent,

v.

Dallas PRESTON, Appellant.

No. WD 65093.

Missouri Court of Appeals, Western District.

April 28, 2006.

James T. Holcomb, Trenton, MO, for appellant.

Allan B. Turner, Chillicothe, MO, for respondent.

Before ULRICH, P.J.,
BRECKENRIDGE and SMART, JJ.

PATRICIA BRECKENRIDGE, Judge.

Dallas Preston (Husband) appeals the Amended Judgment and Decree of Dissolution entered in the dissolution proceedings between him and his wife, Mary Preston (Wife). Husband raises three claims of error on appeal. First, Husband asserts the trial court erred in equally dividing $10,000 in insurance proceeds between him and Wife. Second, Husband claims the trial court erred in determining that a motor home was marital property. Finally, Husband contends the trial court erred in failing to declare as marital property two bank accounts set over to the parties' minor son, Dalton. This court finds no error in the portion of the trial court's judgment equally dividing the insurance proceeds or the provisions of the trial court's judgment finding Husband's motor home to be marital property. This court finds, however, that the record is insufficient to determine the proper nature of the bank accounts set over to Dalton. Consequently, those provisions are reversed, and the case is remanded to the trial court to hear additional evidence concerning the accounts and to make a proper disposition of the accounts. The trial court's judgment is affirmed in all other respects.

## Factual and Procedural Background

Husband and Wife were married on May 27, 1989. There was one child of the marriage, Dalton James Preston, born May 10, 1993. On approximately October 25, 2002, the parties separated and Wife filed a petition for dissolution. When Wife left the marital home, she took items of personal property with her.

On approximately May 11, 2003, while Husband was still living in the marital home, a fire destroyed the home and most of its contents. An insurance policy on the home provided $80,000 to cover the loss. Of the $80,000 in insurance proceeds, $70,000 was paid for the loss of the residence and $10,000 was paid for the loss of the contents of the house.[1] About a month

---

1. Husband's parents deeded one acre and a house to Husband as a gift. The house was

after the fire, Husband purchased a motor home for $54,900, which he used as a temporary residence. Husband paid cash for the motor home. Of the cash paid, $20,000 was a loan from his parents and the remainder, $34,900, was withdrawn from a bank account at Citizen's Bank of Princeton.

On June 16, 2003, the trial court heard evidence on Wife's prayer for dissolution of the parties' marriage. At the conclusion of the hearing, the court entered an interlocutory order dissolving the marriage of the parties. Thereafter, Ms. Preston married Steven Tracy.[2] The other issues raised by the dissolution petition were tried on May 24, 2004. At that trial, among other issues, the parties disagreed as to the nature of the insurance proceeds for the personal property loss and the motor home. Husband claimed that all but $300 of the insurance proceeds for the loss of personal property was his separate property. He also claimed the motor home as his separate, nonmarital property. Wife claimed that these items of property were marital. In addition to these items of property, the parties did not agree as to the disposition of two bank accounts at the Citizen's Bank & Trust Company of Chillicothe, one valued at $5059 and the other at $11,423, which were in the names of Wife and the parties' son, Dalton. Husband requested that the trial court award the $5059 account to Wife and the $11,423 account to him. Wife did not include these accounts in her exhibit with her proposed division of property.

The trial court initially entered its Judgment and Decree of Dissolution on November 8, 2004. Both parties filed a motion for a new trial or, in the alternative, to amend or correct the judgment. After hearing these motions, the trial court entered an Amended Judgment and Decree of Dissolution on February 7, 2005. In that judgment, the trial court found that the insurance proceeds for the loss of personal property were marital property and awarded each party $5,000, one-half of the proceeds. The court also found that the entirety of the motor home was marital property and awarded it to Husband. The court further ordered that the two accounts in the names of Wife and Dalton be set off to Dalton as his property. Husband appeals from that judgment.

## Standard of Review

As a court-tried case, the applicable standard of review, here, is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Hilligardt–Bacich v. Bacich*, 174 S.W.3d 11, 14 (Mo.App. E.D. 2005). Accordingly, this court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. This court will "view the evidence and the inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence." *Bacich*, 174 S.W.3d at 14. "The trial court is permitted great flexibility in its division of marital property" and "is free to believe or disbelieve all, part, or none of the testimony given by any of the witnesses." *Thill v. Thill*, 26 S.W.3d 199, 203 (Mo.App. W.D.2000). Neither Husband, nor Wife, requested findings of fact or conclusions of law. Consequently, in accordance with Rule 73.01(c), "[a]ll fact issues upon which no specific findings are

---

the marital residence of the parties until they separated. At trial, Wife acknowledged that the land and house were Husband's separate property and he was entitled to $70,000 of the insurance proceeds for the loss of the residence.

**2.** After her marriage to Steven Tracy, Wife assumed the name of Mary Tracy.

made shall be considered as having been found in accordance with the result reached."

## No Error in Dividing Insurance Proceeds

■ In his first point on appeal, Husband claims the trial court erred in equally dividing the $10,000 in insurance proceeds for the parties' personal property that was destroyed in the fire. Husband claims the trial court did not properly apply section 452.330, RSMo 2000,[3] and should have awarded him all but $300 of the insurance proceeds because the value of Wife's marital property destroyed by the fire was less than $300. Husband asserts that the fire occurred nine months after Wife had moved out of the house and, at the time of the fire, she had already removed "a substantial amount of her non-marital assets as well as marital assets" from the house.

Section 452.330.3 provides that "[a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property ... [, unless t]he presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section."[4] The insurance proceeds for the loss of personal property were acquired by the parties during the marriage. Therefore, the proceeds are presumed to be marital property, and Husband has the burden of rebutting that presumption. *Hoberock v. Hoberock*, 164 S.W.3d 26, 30 (Mo.App. E.D.2005).

Husband presented no evidence that the insurance proceeds were not marital property because they were acquired by a method listed in subsection 2 of section 452.330.2. In particular, Husband did not present evidence that the insurance proceeds were received "in exchange" for property he acquired prior to the marriage or property he acquired subsequent to the marriage by gift, bequest, devise, or descent. Section 452.330.2(2). He instead argues, on appeal, that Wife failed to present sufficient evidence to show that the personal property destroyed was her nonmarital property or marital personal property that she claimed she wanted in the dissolution. Husband's assertion appears to be based upon a mistaken belief that when the parties physically divided the personal property at the time they separated, the property Wife took with her became her property and the property Husband had in his possession became his property, or possibly that their oral agreement as to who would have the personal property was binding on the parties and the court. Under either theory, when the parties physically divided the personal property at the time of separation, it did not become nonmarital property. Without a "valid written agreement" of the parties to make the items of personal property nonmarital, as required by section

---

3. All statutory references are to the Revised Statutes of Missouri 2000.

4. Section 452.330.2 states:

For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

452.330.2(4), it retained its character as marital property. It was merely marital property in the possession of one spouse or the other. Therefore, the personal property destroyed in the fire remained marital property, as did the insurance proceeds payable upon its loss.

Husband has not overcome the presumption that the insurance proceeds were marital property. *Hoberock,* 164 S.W.3d at 30. The trial court has broad discretion in dividing marital property, *Travis v. Travis,* 163 S.W.3d 43, 46 (Mo.App. W.D.2005), and it did not abuse its discretion in dividing the insurance proceeds on the personal property so that each party received one-half or $5,000. Husband's first point is denied.

## No Error in Finding Motor Home Marital Property

■ In his second point on appeal, Husband claims the trial court erred in "declaring the entire value of the motor home as marital property." In its judgment, the trial court found that the motor home was marital property valued at $54,900, awarded the motor home to Husband, and ordered him to pay the indebtedness on it of $20,000 to his parents. As a result, equity of $34,900 in the motor home was included in the value of the marital property awarded to Husband, which was used to calculate the cash judgment awarded to Wife to equalize the division of marital property. Husband claims that the trial court's determination that the motor home was marital property is a misapplication of section 452.330, because the cash used to purchase the motor home came from a $20,000 loan from his parents and $34,900 from funds that were gifts from his parents.

Again, under section 452.330.3, "[a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property." The motor home was acquired by Husband after the date of the marriage and prior to the dissolution of the parties' marriage. Therefore, the motor home is presumed to be marital property, unless Husband proves that the motor home was acquired by a method listed in subsection 2 of 452.330. *Hoberock,* 164 S.W.3d at 30. Husband has the burden of proving "by clear and convincing evidence" that the motor home falls within one of the enumerated exceptions to section 452.330. *Boschert v. Boschert,* 73 S.W.3d 869, 873 (Mo.App. E.D.2002).

The provision of 452.330.2 which Husband claims is applicable is that the motor home was acquired "in exchange for property acquired by gift." Section 452.330.2(2). He refers this court to his testimony, at trial, that the $34,900 payment toward the purchase of the motor home was from a bank account in which he had deposited annual gifts of $18,000 from his parents. Both Husband and his father testified that the $18,000 Husband received each year from his parents was a gift. They testified that Husband's parents gave him one-half, or $18,000, of the CRP payment that the parents received for their farm each year. There was also evidence to the contrary, however.

At trial, Wife testified that Husband was paid $18,000 a year for services he provided to his parents on their farm. She introduced into evidence a written agreement from 1995, between Husband and his parents, in which Husband agreed to perform services on his parents' farm and provide equipment to perform those services, in exchange for payment of one-half of the parents' CRP payment, at that time $15,000. She testified that the recent payments from his parents of one-half of their CRP payments that were deposited into the account from which he withdrew $34,900 for the purchase of the motor

home were, likewise, paid under an agreement for the performance of services on the farm by Husband. There was further evidence from Husband's father about other agreements prior to 1995, where Husband was paid by his parents for work on their farm. At one time, Husband managed a cattle herd for his parents and received one-half of the calves born each year. His father also testified to a prior agreement where Husband planted row crops on his parents' land on a cash rent basis.

Husband even testified that his parents gave him $18,000 each year because he "provided lots of benefits" to his parents on their "investment." According to Husband, the services he provided in exchange for the payments included mowing, planting food plots, and "maintaining trees and noxious weeds." Husband also testified that he watched over his parent's investment because they lived in Texas. While Husband and his father testified that Husband received the money as a gift from his parents because he was their son, Husband's father testified that none of his other four children receive gifts of this nature.

This was substantial evidence to support the finding by the trial court that the $18,000 received each year by Husband was not a gift but, rather, was payment for services Husband performed for his parents. While Husband and his father testified that the payments were intended to be a gift, the trial court was not required to believe their testimony. *Thill*, 26 S.W.3d at 203. As a payment in exchange for services rendered, the $18,000 a year was income and not a gift under section 452.330.2(1) and was marital property. The trial court did not abuse its discretion in finding that Husband failed to demonstrate by "clear and convincing evidence" that the $34,900 of the purchase price of the motor home was funded by gifts from his parents. *Boschert,* 73 S.W.3d at 873. Therefore, the trial court did not err in finding that the motor home was marital property. Husband's second point is denied.

### Remand Required For Determination of Bank Accounts

■ In his third point on appeal, Husband asserts that the trial court erred in finding that two bank accounts, containing a total of $16,482, were the property of the parties' minor child and not marital property. Specifically, Husband contends that no evidence was presented, at trial, that these bank accounts are custodial accounts under the Missouri Transfers to Minors Law (MTML), section 404.005 to 404.094. Consequently, Husband claims these bank accounts should have been deemed marital property.

The evidence at trial concerning these accounts was Wife's testimony that there were two accounts at Citizens Bank of Chillicothe, which were in the names of Wife and Dalton. This evidence was limited to the existence of two accounts, Account No. 8127611 and a certificate of deposit (CD).[5] There was no evidence as to the source of the funds in the accounts, the amount of the funds, or how the accounts were titled. Specifically, Wife testified that she has an account at Citizen's Bank in her name and Dalton's name, Account No. 8127611. She also testified that she has "a CD with Dalton at the Bank," presumably Account No. 83461. Wife did not list either account in Petitioner's Exhibit 1, her statement of marital and nonmarital property. Husband listed both accounts

---

5. The parties refer to the two deposits at the Citizens Bank of Chillicothe in the names of Wife and Dalton as two "accounts" and that terminology will be utilized by this court for ease of reference.

as marital property, with the accounts' values, in his statement of marital and nonmarital property, Respondent's Exhibit 1. He listed Account No. 8127611, with a value of $5,059, and CD No. 83461, with a value of $11,423. His only testimony concerning the accounts, however, was that he "knew of the accounts."

In a letter to the parties' counsel, dated September 2, 2004, the trial court related its "findings concerning the issues presented at [the] hearing" and requested that Wife's attorney prepare a proposed judgment entry. In this letter, the trial court referred to its Exhibit A and found that "[t]he two bank accounts listed therein shall remain in Dalton's name with his mother, Mary Tracy[,] listed as the custodian." In the trial court's judgment, however, no such language is used. The two bank accounts are simply listed under "Dalton's Property."

Since Wife has an interest in the accounts, there is the potential that at least a portion of the accounts is marital property. Further, since Dalton was eleven-years-old at the time of trial, it is less likely that he was the source of the funds than it is that Wife was the source of the funds. If the funds in the accounts originated from Wife's income during the marriage, then disposition of the accounts would be governed by the principle that "[b]ank accounts held by parties in custody for children are properly distributed as marital property absent evidence that the accounts were established as custodial accounts under the requirements" of the Missouri Transfers to Minors Law (MTML). *Weiss v. Weiss*, 954 S.W.2d 456, 459 (Mo.App. E.D.1997).

To create a custodial account, under section 404.047.1(2) of the MTML, money must be properly transferred to a custodian for a minor, "by having it paid or delivered to a broker or financial institution for the account of the person designat-

ed custodian followed in substance by the words: 'as custodian for .......... (name of minor) under the Missouri Transfers to Minors Law'[.]" If property has been transferred to a child under the provisions of MTML, it is proper in a dissolution of marriage proceeding to recognize the property is that of the child. *In re Marriage of Kenney*, 137 S.W.3d 487, 491 n. 6 (Mo.App. S.D.2004).

Husband argues that, because the record is lacking in evidence that the bank accounts, at issue here, were established under the requirements of the MTML, the bank accounts *must* be treated as marital property. This court disagrees that any disposition of the accounts is supported by the record. The record is so deficient that the trial court did not have sufficient evidence to determine whether the accounts are marital, nonmarital, or the property of a third person, Dalton. Without evidence to establish the nature of the accounts, the trial court did not have a legal basis to distribute the funds as it did. Nor, in the absence of such evidence, would the trial court have had a legal basis to distribute the funds as marital assets.

Here, in view of the lack of evidence, the trial court erred in excepting the bank accounts from marital property and determining that the accounts are Dalton's property. Consequently, the provisions in the judgment determining that the two accounts in Citizens Bank in the names of Wife and Dalton shall be the property of Dalton are reversed. The case is remanded to the trial court with instructions to hear additional evidence concerning the source of the funds in the two accounts and how the accounts are titled. *See Chen v. Li*, 986 S.W.2d 927, 933 (Mo.App. E.D. 1999). Then, in light of that evidence, trial court shall enter proper orders for disposi-

tion of the accounts. The trial court's judgment is affirmed in all other respects.

All concur.