Sarah GROENINGS, Appellant,

v.

William A. GROENINGS,
Sr., Respondent.

No. ED 90180.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 2, 2008.

Rehearing Denied Jan. 21, 2009.

Alan E. Freed, Clayton, for appellant.

M. Zane Yates, Clayton, for respondent.

GEORGE W. DRAPER III, Judge.

Sarah Groenings (hereinafter, "Wife") appeals from the trial court's judgment dissolving her marriage to William Groenings (hereinafter, "Husband"). Wife raises eight points on appeal with respect to the characterization and division of marital property, the allocation of marital debt, the award of attorneys' fees at trial and on appeal, and the absence of a legal description for the real properties divided at trial. We affirm in part, reverse and remand in part.

The parties were married on November 21, 1987, in Cook County, Illinois, and later moved to Missouri. Two children were born of the marriage and were unemancipated at the time of the dissolution. The parties separated on January 25, 2006, and Wife filed for dissolution on April 5, 2006. During the trial, the parties entered into a consent agreement resolving all pertinent issues with respect to the parties' obligations to the minor children, including legal and physical custody, visitation, and child support.

After receiving testimony and exhibits from each party, the trial court entered its judgment dissolving the marriage on July 11, 2007. The trial court divided the parties' property, allocated the marital debt, and entered an award of attorneys' fees in Husband's favor. Wife now appeals. To avoid repetition, additional facts will be elucidated as they pertain to Wife's points on appeal.

This Court reviews a judgment of dissolution in the same manner as we review any court-tried case. *Wood v.*

*Wood,* 193 S.W.3d 307, 310 (Mo.App. E.D. 2006). The judgment must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* (*citing Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). We will not retry the case, but rather, accept as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and disregard all evidence and inferences to the contrary. *Slattery v. Slattery,* 185 S.W.3d 692, 696 (Mo.App. E.D.2006). "This Court defers to the superior ability of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript." *Id.*

Wife raises eight points on appeal. Wife's first and third points challenge the trial court's division of property, and therefore, we address them in tandem. In her first point, Wife argues the trial court erred in awarding Husband a disproportionate share of the net equity of the marital residence located at 520 East Monroe (hereinafter, "the Monroe property") based upon his contribution of separate property in that it was not supported by competent and substantial evidence.

The evidence adduced at trial revealed that prior to the marriage, Husband had an interest in a land trust dating back to 1979. After the parties were married and moved to St. Louis, the parties purchased a residence at 400 Lenore Avenue (hereinafter, "the Lenore property") for an undisclosed amount. Wife obtained a loan from her brother in the amount of $70,000, and Husband sold some of his holdings in the 1979 land trust for the remainder of the purchase price. Husband testified he sold additional holdings from the 1979 land trust in order to repay the loan from

Wife's brother. The Lenore property was titled jointly between Husband and Wife.

The parties lived at the Lenore property for approximately two years. The Lenore property was then later sold, and the parties purchased a new residence at 1324 Wilton Lane (hereinafter, "the Wilton property") for $278,000. The Wilton property was titled jointly and the entire purchase price was derived from the Lenore property sales proceeds. The parties only resided at the Wilton property for two additional years when it was sold so that the parties could acquire the Monroe property. Again, the entire purchase price of $366,181 was derived from the Wilton property sale proceeds and the Monroe property was titled jointly. Both parties testified with respect to their opinion of the Monroe property's fair market value.

Upon receiving this testimony, the trial court found the Monroe property was marital property and determined its fair market value was approximately $1.1 million based upon the parties' testimony. The trial court then stated it would be more equitable to award the Monroe property to one of the parties instead of ordering the property be sold and the net proceeds divided equitably.

After reviewing each of the transactions from the time the parties purchased the Lenore property to the present, the trial court found that the total purchase price of the Monroe property was "derived from funds resulting from the sequence of cash/assets and transactions involving the assets and real estate [Husband] obtained" through the 1979 land trust. Further, the trial court found it was never Husband's intention for these assets and those properties to be shared with Wife. Moreover, the trial court determined Husband never intended, nor did he actually convert those assets and proceeds from the sale of the 1979 land trust holdings so as to give Wife

any rights of ownership or marital interests. As such, the trial court deemed the monies used to purchase the Monroe property were "the separate property of [Husband] derived from premarital interests."

Wife's first point challenges these findings. Specifically, Wife argues the evidence showed Husband deliberately titled the marital residences jointly, thus revealing an intent to convert his separate property contribution into marital property. Further, Wife argues the record does not contain any evidence of the amount of Husband's base contribution to the purchase of the parties' first jointly titled marital residence, the Lenore property. As such, Wife argues the trial court did not have a baseline upon which to determine the amount of Husband's initial separate contribution. We agree.

Generally, when a spouse acquires property prior to the marriage and retains separate title to it after marriage, that property is deemed separate upon dissolution of the marriage. *Vinson v. Vinson*, 243 S.W.3d 418, 423 (Mo.App. E.D.2007); *In re Marriage of Thomas*, 199 S.W.3d 847, 863 (Mo.App. S.D.2006). A statutory presumption exists, however, that all property acquired by either spouse subsequent to the marriage is marital property. Section 452.330.2 RSMo (2000).[1] "The party challenging the presumption must demonstrate by clear and convincing evidence that property is nonmarital." *Wood*, 193 S.W.3d at 312. "The clear and convincing evidence standard refers to evidence that 'instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true.'" *Hoecker v. Hoecker*, 188 S.W.3d 497, 500 (Mo.App. W.D.2006)(*quoting McCoy v. McCoy*, 159 S.W.3d 473, 475 (Mo.App. W.D.2005)).

Here, it is clear the Monroe property was titled jointly, acquired after the date of the marriage, and prior to the dissolution of the parties' marriage. Therefore, the Monroe property is presumed to be marital property, unless Husband proves that it was acquired by a method listed in Section 452.330.2. *See Preston v. Preston*, 189 S.W.3d 685, 689 (Mo.App. W.D.2006). We then examine the record to see if Husband has overcome this presumption by producing clear and convincing evidence that "both parties intend that the property be excluded from their marital property." *Hoberock v. Hoberock*, 164 S.W.3d 26, 30 (Mo.App. E.D.2005).

Husband does not dispute the Lenore, Wilton, and Monroe properties were marital properties; yet, he agrees with the trial court's assessment that he did not intend to convert his separate funds from the 1979 land trust into marital property. Moreover, Husband argues his monetary contributions to the purchase of each home entitled him to a larger distribution of the net equity of the Monroe property. Our review of the record indicates otherwise.

Transmutation arises when one spouse converts non-marital property into marital property by gift or by express or implied agreement. *Hoecker*, 188 S.W.3d at 500. "When a spouse places his [or her] non-marital property into the names of both spouses, then a rebuttable presumption arises that the property has been transmuted into marital property." *Id.*; *See also, Winter v. Winter*, 167 S.W.3d 239, 244 (Mo.App. S.D.2005); *Selby v. Selby*, 149 S.W.3d 472, 484 (Mo.App. W.D. 2004). The spouse seeking to rebut this presumption must demonstrate through clear and convincing evidence that he or

---

1. All statutory references are to RSMo (2000) unless otherwise indicated.

she did not intend a gift to his or her spouse. *Hoecker, supra.* "Self-serving testimony that a spouse did not intend a gift is entitled to little weight when that spouse caused separate property to be transferred to the spouses jointly." *Winter,* 167 S.W.3d at 244.

Here, Husband claims he made it clear at trial he did not intend to share the proceeds of the 1979 land trust assets with Wife when he used those proceeds to buy the Lenore property as a joint marital residence. Our review of the record reveals Husband merely requested reimbursement for the entire purchase price of the Monroe property at trial. We find this statement fails to rise to the level of clear and convincing evidence demonstrating Husband's intent, especially when examining Husband's testimony as a whole. This finding is bolstered by the pains Husband took to keep other properties he acquired during the marriage his separate property. The record reveals Husband sold additional assets from the 1979 land trust in order to purchase additional properties which were not titled jointly and which Husband specifically testified he wanted awarded as his separate property, free of any marital interests Wife may claim in the property.

We note, however, that the "transmutation of separate property into marital property will not preclude the trial court from considering the premarital contribution in dividing the marital property." *Krepps v. Krepps,* 234 S.W.3d 605, 614 (Mo.App. W.D.2007)(*quoting Gremaud v. Gremaud,* 860 S.W.2d 354, 357 (Mo.App. E.D.1993)). "In order to calculate the extent to which an increase in the value of separate property constitutes marital property, it is necessary, among other things, to establish the value of said property at the time of the marriage." *In re Marriage of Canady,* 180 S.W.3d 534, 537 (Mo.App. S.D.2006). Here, the record is completely devoid of any evidence with respect to how much money Husband derived from the sale of the 1979 land trust holdings nor is there any evidence with respect to the purchase price of the Lenore property. Thus, even if we agreed Husband should be awarded a disproportionate amount of the net equity of the Monroe property based upon his initial separate contribution to the purchase of the Lenore property, we would be unable to affirm such an award in the absence of this evidence.

Based on the foregoing, we find the trial court erred in setting aside the entire purchase price of the Monroe property to Husband as his separate property. The evidence at trial demonstrated Husband transmuted his separate property from the 1979 land trust into marital property when he purchased the Lenore property, a marital residence jointly titled between the parties. Husband failed to rebut the presumption of a gift to Wife with clear and convincing evidence. Further, we deem it proper that Husband's separate contribution be considered with respect to distribution of the net equity of the Monroe property. However, we must remand this issue for further proceedings, specifically with respect to the amount Husband initially contributed to the purchase of the Lenore property. Wife's first point is granted.

In her third point, Wife claims the trial court erred in giving Husband a credit in the amount of $2,636.21 for contributions of separate property used to pay for improvements to the Monroe property. In addition to seeking reimbursement for the separate contributions he made with respect to purchasing the Monroe property as discussed with respect to Point I, Husband also requested a credit for contributions made from his separate money market account, rental income derived from

his separate property, and funds from his Roth IRA, which he claims were used to increase the value of the marital residence. The trial court found these monies "contributed significantly to the fair market value of the [Monroe] property". The trial court then reduced Wife's portion of the net equity she was to receive from the Monroe property by $1,318.10. Wife argues this finding is unsupported by the evidence in that Wife claims each contribution contained marital funds and Husband failed to demonstrate the source of the funds in order to show they were his separate property. We agree.

We have consistently held that income received during the marriage from a spouse's separate property is marital property. *Moore v. Moore,* 189 S.W.3d 627, 636 (Mo.App. W.D.2006). This includes rental income earned on separate property. *Holman v. Holman,* 228 S.W.3d 628, 639 (Mo.App. S.D.2007). Moreover, "[a]ny increase in the value of separate property is marital property if marital assets or marital labor contributed to acquiring that increase." *Selby v. Selby,* 149 S.W.3d 472, 484 (Mo.App. W.D.2004).

We begin with Husband's money market account, which was undisputed separate property. Husband failed to delineate what portion of the $2,636.21 amount came from his money market account so that it could be considered a proper separate contribution. Second, the law is clear that any rental income Husband derived from his separate property was marital in nature. Finally, with respect to the Roth IRA Husband cashed out, Wife's uncontroverted testimony was that she funded that IRA with income earned through her employment. As such, any increase in the value of Husband's separate IRA that received marital funds was marital property. Therefore, we find the trial court misapplied the law in granting Husband a credit

of $2,636.21 for his separate contributions and such an award was not supported by the evidence. We remand this issue for further consideration in light of our discussion contained herein. Wife's third point is granted.

In her second point, Wife argues the trial court erred in finding the parties were indebted to a trust in the amount of $253,000 because the document purporting to create this obligation was vague and unenforceable, did not meet the requirements of a promissory note, and did not create any enforceable interest in the Monroe property. Husband disagrees, arguing there was no dispute that the monies received from the JEG Trust were to be repaid per the terms of the agreement set out in the document entitled "520 East Monroe, JEG Trust Distribution Proposal" (hereinafter, "the Proposal").

The evidence presented to the trial court with respect to the trust is vague. What can be gleaned from the record is that Husband and Wife's uncle, Joe Rohs, were cotrustees of a trust referred to as "the JEG Trust." The trust held two bank accounts and both parties admitted these accounts constituted Husband's separate property. Both parties testified that money was withdrawn from the JEG Trust on various occasions to cover certain family expenses. Husband testified he believed the Monroe property was encumbered by a debt held by the JEG Trust. To support this testimony, Husband offered the Proposal into evidence.

The Proposal states in pertinent part: "Take a $120,000.00 distribution from the JEG Trust, with the understanding that upon the future sale of house, 23% of the sale proceeds to be returned to the JEG Trust, or a like instrument." The Proposal was signed and dated by both parties. The parties ultimately received a $137,000 distribution from the JEG Trust that was

used to build an addition onto the Monroe property.

Wife testified she "browsed" the Proposal when Husband presented it to her before she signed it but stated she did not understand fully what she was signing. Wife explained she thought she had to sign it in order to protect her uncle, and Husband believed the money was to be repaid to the JEG Trust.

Husband testified he wanted this distribution to be considered his separate contribution that he provided to the Monroe property and asked the trial court to take the contribution into account with respect to the final distribution of the proceeds of the sale of the Monroe property. When asked if the funds from the JEG Trust were a loan, Husband answered:

> The money was pulled from that account as a distribution because money could not go back into the JEG Trust; therefore, it reads like instrument; otherwise we would be paying interest and paying taxes on that, and so it was a—it was a distribution out of the trust with the agreement between [Wife] and myself to repay it to a like instrument. A new instrument was going to be created and that was the understanding.

Later, Husband stated, "It was not structured out of the JEG Trust as a loan. The money is pulled out of a distribution. A loan—an agreement was created subsequent, or at the time, but the money does not go back into the JEG Trust. It goes into a like instrument. . . ." Husband then explained his understanding was that the distribution was a loan that was to be repaid to the trust.

■ The existence of a loan is "purely a question of fact, depending for the most part on the credibility of the witnesses." *In re Marriage of Elliott,* 179 S.W.3d 323, 325 (Mo.App. S.D.2005); *See also, Youngberg v. Youngberg,* 194 S.W.3d 886, 891

(Mo.App. S.D.2006); *In re Marriage of Michel,* 142 S.W.3d 912, 922 (Mo.App. S.D. 2004); *Panettiere v. Panettiere,* 945 S.W.2d 533, 543 (Mo.App. W.D.1997). The trial court's judgment specifically found Husband provided credible testimony and exhibits which supported the contention that the parties borrowed funds from the JEG Trust and the trust held a lien against the Monroe property. The trial court then determined the amount of the lien based upon the Proposal's terms that the parties would repay the JEG Trust approximately twenty-three percent of the Monroe property's sale proceeds. Since the Monroe property was not ordered to be sold at the time of the judgment, the trial court used the fair market value of $1.1 million and determined twenty-three percent of that amount was $253,000. After arriving at this amount, the trial court classified it as an additional encumbrance against the Monroe property which was taken into account before dividing the net equity between the parties. Since we must defer to the trial court's credibility determinations, this point fails. Point denied.

■ Wife's fourth and fifth points challenge the trial court's allocation of marital debt. Section 452.330.1 directs the trial court in a dissolution action to divide the parties' marital property and marital debts. *Hetherington v. Hetherington,* 230 S.W.3d 21, 22 (Mo.App. E.D.2007). " 'Marital debt' encompasses all debts incurred during the marriage, either jointly or separately." *Dunnagan v. Dunnagan,* 239 S.W.3d 181, 187 (Mo.App. S.D.2007)(*quoting Gryder v. Gryder,* 129 S.W.3d 467, 471 (Mo.App. S.D.2004)). We will not reverse a trial court's division of marital debt in the absence of a clear showing of an abuse of discretion. *Rawlings v. Rawlings,* 36 S.W.3d 795, 798 (Mo. App. W.D.2001).

■ In her fourth point on appeal, Wife argues the trial court erred in ordering the parties to reimburse the children's savings accounts in that the finding is unsupported by the evidence. Wife claims the accounts were reimbursed after paying their 2004 tax obligations; however, Husband unilaterally withdrew a like amount without Wife's knowledge or consent during the pendency of the dissolution to pay for household expenses. As such, Wife argues Husband should be obligated to repay those accounts in full because she received no use of the funds which were later withdrawn.

The trial court's judgment found the disputed funds were withdrawn to pay for the "2004 tax payment and subsequently for general operation expenses for [the Monroe property], from which both [Wife and Husband] have equally benefited." This finding is supported by evidence adduced at trial. Husband does not dispute he unilaterally withdrew the funds from the children's account. Husband testified at trial that the parties withdrew $10,000 from the children's accounts in April 2005, to pay their 2004 income taxes. The accounts were reimbursed in May 2006. However, at the time of trial, each account only held a "couple hundred dollars." Husband explained that the children's accounts were always used as "overage" accounts where money was often pulled out, always returned, and "[a]t some point, the money then came out of the home equity or out of the children's savings accounts and paid for bills ... and household expenses." The trial court did not abuse its discretion in allocating this marital debt equally between the parties. Point denied.

■ In her fifth point, Wife argues the trial court erred in ordering her to pay fifty-seven percent of the parties' 2005 income tax obligation because the order was not supported by competent and substantial evidence on the record. Wife believes the trial court erred in not dividing the obligation equally in that all of the income earned by the parties in that year was used by both parties for the benefit of the entire family. We disagree.

At trial, the parties' agreed Wife earned significantly more income than Husband during the 2005 tax year. However, Husband testified he would accept an obligation of forty-three percent based upon his imputed income and even suggested he would be willing to split the tax bill evenly with Wife. Further, Wife acknowledges this split accurately represents the parties' relative earning capacities, yet she argues the debt should be reduced by seven percent, or approximately $1,050.00. We cannot say based upon the testimony presented that the trial court abused its discretion by allocating the tax debt in proportion to the parties' relative earning capacities. Point denied.

■ In her sixth point on appeal, Wife argues the trial court erred and abused its discretion in ordering her to pay a portion of Husband's attorneys' fees incurred prior to and during trial. Wife argues the disproportionate property distribution supports a finding that Husband has a substantially greater ability to pay his own fees.

■ Generally speaking, parties to a domestic relations case are responsible for paying their own attorneys' fees. *Kinner v. Scott*, 216 S.W.3d 715, 721 (Mo.App. S.D.2007). A trial court may, however, award attorneys' fees pursuant to Section 452.355.1 after considering "all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." We review the trial court's decision to award attorneys' fees for an abuse of discretion. *Russell v. Russell*, 210

S.W.3d 191, 199 (Mo. banc 2007). An abuse of discretion occurs where the trial court's award was so arbitrary and unreasonable and against the logic of the circumstances as to shock the sense of justice and indicate that the trial court did not carefully consider its decision. *Schindler v. Schindler*, 209 S.W.3d 35, 40 (Mo.App. E.D.2006). "The party requesting an award of attorney fees in a dissolution action has the burden of proving his or her entitlement to such an award." *Davis v. Schmidt*, 210 S.W.3d 494, 512 (Mo.App. W.D.2007).

"While a spouse's inability to pay is not required to support an award of attorney's fees, the award must consider the financial position of each spouse." *Mitalovich v. Toomey*, 206 S.W.3d 361, 368 (Mo.App. E.D.2006). Here, there was evidence presented at trial of a significant discrepancy in the amount of income Wife earned and the amount Husband earned. Thus, due to Wife's considerably higher income, she has a greater ability to pay attorneys' fees. *See Russell*, 210 S.W.3d at 199.

"However, the fact that one party earns more than the other, standing alone, does not compel an award of attorney fees." *Scott v. Scott*, 144 S.W.3d 921, 923 (Mo. App. S.D.2004). The trial court is also permitted to consider a spouse's conduct during the marriage in determining whether an award of attorney's fees is appropriate. *Russum v. Russum*, 214 S.W.3d 376, 386 (Mo.App. W.D.2007). Here, the record reflected Wife's failure to comply with pretrial pendente lite orders caused Husband to incur additional fees. Based upon the foregoing, we cannot say the trial court abused its discretion in ordering Wife to pay a portion of Husband's attorneys' fees incurred at trial. Point denied.

Related to her sixth point, Wife argues in her seventh point that the trial court erred and abused its discretion in ordering her to pay a portion of Husband's attorneys' fees on appeal. Wife claims this award is against the weight of the evidence in that the evidence demonstrated Wife's income had dropped dramatically since the trial and Husband had a greater ability to pay his fees given the disproportionate property division in his favor.

Section 452.355.1 permits the trial court to award attorneys' fees on appeal of a dissolution decree. *Russum*, 214 S.W.3d at 387. "A party seeking attorney's fees on appeal must show the extent of the necessary services to be rendered by counsel, and the expenses related thereto, so that the trial court may make an award based on evidence of such services and expenses." *Travis v. Travis*, 174 S.W.3d 67, 72 (Mo.App. W.D.2005). Additionally, "[t]he trial court is considered an expert on the necessity, reasonableness, and value of attorney's fees." *Id.* at 71. We presume the trial court's award is correct and we will reverse the award only upon a showing that the trial court has abused its discretion. *Id.*

The record supports the trial court's award of attorneys' fees on appeal. Both parties filed post-trial motions requesting an award of attorneys' fees on appeal and the trial court held a hearing on this issue. Husband and Wife both offered exhibits and testimony demonstrating the change in circumstances to their respective economic positions. Wife testified that she had earned approximately $21,000 as a real estate agent from January 2007 through the time of the hearing in October 2007, but had several listings pending sale. Wife indicated she had to borrow money from family and friends to meet her monthly needs because of the downturn in the housing market. Husband testified his financial position had not changed since

the time of trial. While he remained unemployed, Husband stated he spent his time renovating the Monroe property in order to put the house on the market to be sold. After hearing the evidence and making a specific reference to the judgment and Wife's income as determined therein, the trial court denied Wife's motion and ordered her to pay half of Husband's fees on appeal. We cannot say the trial court abused its discretion in ordering Wife to pay a portion of Husband's attorneys' fees on appeal. Point denied.

■ In her final point, Wife argues the trial court erred in awarding various parcels of property to the parties without including a legal description of each property in the judgment. Husband claims this point has been rendered moot in that the parties have since come to an agreement to file a joint motion to supplement the record on appeal to include the proper legal descriptions of each property. We disagree.

■ "Where real estate is affected by a dissolution decree either by setting apart nonmarital property and thereby extinguishing one spouse's claim through the marriage relationship or by division of marital property as equivalent to conveyance, full legal description must be included in the judgment." *Hughes v. Hughes,* 247 S.W.3d 59, 62 (Mo.App. W.D.2008)(*quoting Lance v. Lance,* 979 S.W.2d 245, 248 (Mo.App. W.D.1998)). "A full legal description is required in order to ensure that the filing of the decree with the recorder of deeds is effective in dispelling future questions about the title to that land." *In re the Marriage of Tanner,* 245 S.W.3d 922, 923 (Mo.App. E.D.2008).

While we commend the parties' willingness to supplement the legal file here on appeal, the legal descriptions must be contained within the judgment below and this defect can be corrected on remand. *See*

*Hughes,* 247 S.W.3d at 62; *Tanner,* 245 S.W.3d at 923. Therefore, the parties' motion to supplement the legal file with these descriptions and have them incorporated into the trial court's judgment which was taken with the case is denied. Wife's eighth point is granted. On remand, the circuit court should correct this error by including the legal descriptions of the properties at issue.

The trial court's judgment is affirmed with respect to the allocation of the marital debt and the award of attorneys' fees below and on appeal. The trial court's judgment is reversed and remanded with respect to the trial court's division of the marital assets, the calculation of the debt owed to the JEG Trust, and with respect to the omission of the legal description of the properties at issue.

ROY L. RICHTER, P.J., and
LAWRENCE E. MOONEY, J., concur.