**Annie BELDEN, Plaintiff–Appellant,**

v.

**Timothy BELDEN, Stuart H. King, and James R. Royce, Defendants–Respondents.**

**No. SD 31694.**

Missouri Court of Appeals, Southern District, Division One.

Dec. 27, 2012.

R. Lynn Myers, Springfield, for Appellant.

Stuart H. King, Springfield, for Respondent.

## NANCY STEFFEN RAHMEYER, J.

Annie Belden ("Appellant") appeals the trial court's judgment entered in favor of Timothy Belden ("Respondent") upholding the execution sale of a home formerly owned by the parties as tenants in common. Specifically, Appellant claims: (1) the trial court erred as the home was her homestead and was, therefore, exempt from execution; (2) the trial court erred in classifying her claim for conversion of personal property located in the home as one in equity to divide marital property; (3) the trial court erred in awarding Respondent attorney's fees and costs; and (4) the trial court erred in granting summary judgment on her claim for wrongful execution. We affirm.

## Factual and Procedural Background

Appellant and Respondent's marriage was dissolved by order of the court on April 30, 2004. The parties were awarded joint legal custody of the three children born of the marriage. The eldest child resided primarily with Respondent, while the two minor children resided primarily with Appellant. Appellant was required to pay $150.00 per month to Respondent as support for the eldest child, and Respondent was required to pay $200.00 per month to Appellant for child support for each of the two minor children. As part of the "PROPOSED SETTLEMENT SUMMARY", Appellant and Respondent owned real property, a home located at 2865 E. Catalpa, as tenants in common for one year "or until [Appellant] acquir[ed] a loan in her own name (whichever comes first)." If Appellant was not able to assume the balance of the loan or acquire a loan in her name within one year, the property would be sold and the proceeds divided equally between Appellant and Respondent. The settlement also provided "[t]he parties have equitably divided the household furnishings that they agreed to be marital property and set apart to each other those items that they have agreed are non-marital property."

Respondent filed a motion to modify child support in late 2004. The court entered a judgment of modification on October 3, 2005, requiring Appellant to pay to Respondent $961.00 per month in child support. Appellant later filed a motion to set aside the judgment and for a new trial, claiming she had been abandoned by her attorney. The court granted Appellant's motion to set aside the modification judgment, but ordered the terms of the modification remain in place as a temporary order of the court pending the final modification judgment.

The final modification judgment, entered on January 18, 2007, awarded Respondent sole custody of the children and required Appellant to pay $661.00 per month in child support.[1] The court ordered Appellant and Respondent to split post-secondary education expenses for the two minor children. Also, the court sanctioned Plaintiff for her "continuous and intentional dis-

---

1. The modification judgment also provided:
   Beginning on October 22, 2004 and continuing through December 1, 2005, [Respondent] shall pay to [Appellant] the sum of $559.00 per month for the support of the minor child, Thomas Belden. As [Appellant's] obligation to [Respondent] exceeds his obligation to her, this amount will be applied as a credit to partially offset [Appellant's] obligation to [Respondent].
   The court found Thomas Belden to have been emancipated as of December 1, 2005.

regard of the orders of [the] Court" by ordering (1) that Appellant pay all GAL fees, including reimbursing Respondent for the $500.00 deposit previously made or paid to the GAL; and (2) that Appellant partially reimburse Respondent for his attorney's fees, including an award of $6,150.00 to James R. Royce ("Royce"), counsel for Respondent, which was in addition to $500.00 in fees he had previously been awarded.

Respondent and Royce applied for writs of execution[2] on May 15, 2007. Respondent's writ application identified the April 30, 2004 dissolution as the judgment entered against Appellant, and listed $27,393.00 as the principal amount of the debt. Royce's writ application similarly identified the April 30, 2004 dissolution as the judgment entered against Appellant, and listed $6,650.00 as the principal amount of the debt owed. Both applications instructed the sheriff to levy upon Appellant's interest in the home, owned by Appellant and Respondent as tenants in common. On May 30, 2007, the sheriff levied Appellant's property and duly filed the notice of levy with the recorder of deeds. The sheriff also mailed notice of sheriff's sale and notice of exemptions to Appellant at the home. Appellant failed to file for any exemptions or challenge the sale in any other way.[3] The property was sold in accordance with the notice of sale on July 3, 2007, to Respondent for $7,000.00. The proceeds of the sale, after costs, were applied to the debt owed to Royce.

On August 16, 2007, Respondent filed a petition for unlawful detainer, alleging ownership of the home by virtue of the sheriff's sale, and that "[Appellant] has refused and continue[s] to refuse to vacate and otherwise surrender possession of the Property." Appellant failed to appear for the hearing, and the court issued judgment in favor of Respondent for possession of the home on September 12, 2007. Additionally, the judgment ordered "[a]ny and all personal property of [Appellant] remaining in the subject real property on this date is declared and deemed to be abandoned by [Appellant] and [Respondent] may remove and/or dispose of the same in any reasonable manner."

Two years later, on August 12, 2009, Appellant filed a five-count petition against Respondent, Royce, and King. In relevant part, Appellant alleged that the property was her homestead and was exempt from execution, and, because the sheriff failed to

---

2. Stuart King ("King") filed for the writs and is listed on the application forms as the attorney for both Respondent and Royce. Appellant named King as a defendant in the litigation underlying this appeal.

3. In Appellant's statement of uncontroverted material facts, she denies Respondent's assertion that she did not file for a homestead exemption. In compiling the legal file, however, Appellant has omitted all of Respondent's materials in support of his motion for partial summary judgment (aside from his Memorandum in Support of Motion for Partial Summary Judgment), as well as the partial summary judgment issued by the trial court. Appellants bear the burden of supplying the appellate court with the record on appeal, and that record should contain "all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Rule 81.12(a) & (c). Because Appellant has not provided us with the supporting materials and judgment, "we are entitled to assume omitted portions of the record were unfavorable to [Appellant], and that is why they were not included." Runny Meade Estates, Inc. v. Datapage Tech. Int'l, Inc., 926 S.W.2d 167, 168 n. 2 (Mo.App. E.D.1996). Moreover, implicit in Appellant's points and arguments is the premise that she did not, in fact, file a claim for exemption. We accept as true that Appellant did not file a claim for the homestead exemption.

have the property appraised, the sale and deed were void. Appellant also alleged that Respondent wrongfully seized and refused to return to her specific items of personal property, "namely all her silverware, her china, all her baby furniture, her air hockey table, and a painting by her daughter." Finally, Appellant alleged a claim against Respondent, Royce, and King for wrongful execution because Respondent and Royce did not have any judgments against Appellant dated April 30, 2004, as identified on the writ applications.

Respondent, Royce, and King filed a motion for partial summary judgment on the basis that the home was not Appellant's homestead and Appellant failed to file a claim for the homestead exemption; the motion was granted by the trial court.[4] On the day of trial, the court determined that "the only matter pending before this Court at this time can only be construed as an action in equity to divide alleged marital property which was not divided by the divorce court[,]" and excused the jury. The court held a bench trial to resolve Appellant's claim that Respondent had wrongfully seized items of her personal property and Respondent's counterclaim for damages. The trial court found in favor of Respondent on Appellant's claim that he had wrongfully seized her personal property, and in favor of Appellant on Respondent's counterclaim for post-secondary education expenses. The court also assessed all court costs and attorney's fees against Appellant for "her disregard of the judgment of the divorce court and the lack of merit of the claims brought in this case," in the amount of $14,618.35. This appeal timely followed.

## Analysis

In her first and second points, Appellant argues summary judgment was inappropriate because the home was exempt from execution as her homestead property. In her first point, Appellant claims:

The trial court erred in sustaining [Respondent, Royce, and King's] motion for partial summary judgment on Counts 1, 4, and 5 based upon the allegation that the real property was not [Appellant's] homestead because Missouri law states that summary judgment is inappropriate if there are genuine issues of material fact in that while there was a lease on the property [Appellant] showed facts upon which is [sic] could be determined that she had not abandoned the homestead and the house in question was where she returned to habitually from her business as a traveling nurse and that she maintained her personal property and locked bedroom in that house.

In her second related point, she avers:

The trial court erred in sustaining [Respondent, King, and Royce's] motion for partial summary judgment on counts 1, 4, and 5 based upon the allegation that [Appellant] failed to claim the homestead exemption because Missouri law states that there is no requirement that a claim for the homestead exemption has to be made in that if the property is a homestead then the property is absolutely exempt and the exemption is self-enforcing.

■ Although Appellant frames both points as error by the trial court in sustaining the motion for partial summary

---

4. All of Appellant's claims against Royce and King were resolved by the first partial summary judgment. Although the final judgment of the trial court is captioned as Appellant v. Respondent, the final judgment incorporates the partial summary judgment to which Royce and King were parties. As such, Royce and King are also respondents in the present appeal. Royce and King have not filed separate briefs on appeal.

judgment, the dispositive issue—whether Appellant was required to file a claim for the homestead exemption—presents no factual question. Rather, her argument raises a question of law, specifically, whether section 513.445, the Missouri statute governing the exemption process, required her to file a claim for the homestead exemption.[5] "Matters of statutory interpretation and the application of the statute to specific facts are ... reviewed *de novo.*" *J.K.M v. Dempsey,* 317 S.W.3d 621, 624-25 (Mo.App. S.D.2010). As a matter of law, Appellant was required to file a claim for the homestead exemption, which she failed to do; therefore, we need not reach the question of whether the property was factually her homestead.

■ Section 513.445.2 provides "[t]he judgment debtor may make claim for exemption by filing a verified request with the levying officer within twenty days after notice of the levy." A similar procedure is outlined in Rule 76.075(b). The plain language of the statute clearly outlines the filing process for claiming an exemption. "There is no need to resort to statutory construction to create an ambiguity where none exists." *State v. Moore,* 303 S.W.3d 515, 521 (Mo. banc 2010). Nothing in the statute suggests, as Appellant does, that a debtor is not required to file a claim for exemption.

In support for her assertion, Appellant relies on *Meeks Leasing Co. v. Young,* 881 S.W.2d 232 (Mo.App. S.D.1994). In *Meeks Leasing,* this Court reversed the judgment granting the sale of property and excused the debtors' failure to *verify* their claim for the exemption, as required under section 513.445.2. *Id.* at 237 (emphasis added). Appellant relies on language from the opinion that "our homestead law establishes that such property is absolutely exempt from attachment or levy, and the exemption is self-enforcing." *Id.* at 236. *Meeks Leasing* does not assist Appellant. In *Meeks Leasing,* the trial court denied the exemption because the request was not properly verified. *Id.* at 236. Although, the *Meeks Leasing* plaintiffs served upon the sheriff a written "Notice of Claim of Homestead", citing the statute and describing the property within the appropriate time frame, the trial court found that "verification [was] jurisdictional[,]"[6] and therefore, the claim for exemption was not valid. *Id.* at 233-34. This Court held that the trial court's finding that the property was not exempt because the notice was not verified was error. *Id.* at 236-37. Section 513.445 and Rule 76.075 do not mandate the loss of the exemption for lack of a verified claim; instead, the purpose of verification is "to secure good faith in the averment that the land seized was a homestead." *Id.*

---

5. All statutory references are to RSMo 2000, and all rule references are to Missouri Court Rules (2012), unless otherwise specified.

6. Our interpretation of *Meeks Leasing* is consistent with the jurisdictional principles outlined in *In re Marriage of Hendrix,* 183 S.W.3d 582 (Mo. banc 2006), and *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009). As our Supreme Court stated in *Hendrix,* "[t]he tendency to call matters 'jurisdictional' that are really only assertions of legal error greatly confuses the notion of jurisdiction in civil cases. It can also create the

potential for great mischief because calling legal errors 'jurisdictional' could be used years later to void settled judgments." 183 S.W.3d at 590. Although Appellant argues that Respondent and the sheriff failed to follow the statutory procedures for the execution and exemption, it does not follow that the execution sale or sheriff's deed are thereby rendered void. Under Appellant's interpretation of *Meeks Leasing,* debtors would have the ability to challenge settled execution sales years later, despite failing to file timely claims for exemption in compliance with the statute.

■ Here, Appellant made no claim whatsoever for the homestead exemption. Section 513.445 and Rule 76.075 afford a procedure by which a judgment creditor may contest whether the property is a homestead as claimed prior to sale. *See id.* at 236. Appellant's failure to file *any* request for homestead exemption deprived Respondent the opportunity to challenge the property's status prior to sale and ultimately resulted in this appeal before this Court today. We do not read *Meeks Leasing* to offer a blanket excusal for judgment debtors, like Appellant, from claiming exempt homestead property at the time that the issue is litigated in the proceeding for the writ of execution. Such a finding would defy the plain language of the statute and undercut the expressed purpose of the exemption procedures. *See McCracken v. Wal–Mart Stores East, LP,* 298 S.W.3d 473, 476 (Mo. banc 2009) (noting that procedural matters required by statute may be waived if not timely raised). Appellant failed to file a claim for the homestead exemption, which she was required to do pursuant to section 513.445, and it is, therefore, irrelevant whether she could prove years later in a collateral proceeding that the property factually was her homestead. Appellant's first and second points are denied.

■ Appellant argues in her third point: The trial court erred in ordering without notice on the day of trial that [Appellant's] conversion Count 3 was actually an equity matter to divide alleged marital property which was not divided by the divorce court because Missouri law is that conversion is a case to be decided by a jury in that [Appellant] had possession of the property in question which was taken from her by [Respondent] without her permission.

As best we can discern from the brief, Appellant is arguing that she pleaded a cause of action for conversion, and, therefore, the trial court erred in classifying it as a claim in equity to divide marital property not previously divided in the dissolution. Underlying her argument appears to be that she properly pleaded a cause of action for conversion. We disagree.

■ Conversion is the unauthorized exercise of dominion or control over another's personal property to the exclusion of the owner's rights. *Kingfisher Hospitality, Inc. v. Behmani,* 335 S.W.3d 486, 498 (Mo.App. S.D.2011).

> Conversion has also been found to require the following three elements: (1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession.

*Mackey v. Goslee,* 244 S.W.3d 261, 264 (Mo.App. S.D.2008) (quoting *R.J.S. Sec., Inc. v. Command Sec. Services, Inc.,* 101 S.W.3d 1, 15 n. 6 (Mo.App. W.D.2003)). To recover on a conversion claim, a plaintiff must establish he had the right to possession of the converted property at the time of the alleged conversion. *Hunt v. Estate of Hunt,* 348 S.W.3d 103, 113 (Mo.App. W.D.2011).

■ Appellant failed to properly plead a cause of action for conversion in her petition and failed to show she had a right to possession of the property or was the owner of the property. Appellant did not plead facts to support a claim that she was entitled to possession of the property at the time of the alleged conversion. In fact, the August 16, 2007 judgment deemed the personal property remaining in the real estate was abandoned and allowed Respondent to remove or dispose of the property. She did not appeal that judgment. Appellant had no claim at the filing

of her petition for the abandoned personal property in the home.[7] Point three is denied.

In her fourth point, Appellant challenges the trial court's award of costs and attorney's fees because in Missouri each party shall bear the expense of their own attorney's fees in that there is no contract right for attorney's fees in this case, no statutory right for attorney's fees in this case, and no special circumstances to make the award of fees necessary.

Appellant is correct that we follow the American Rule, which provides that, generally, litigants must bear the expense of their own attorney's fees. *In re Marriage of Cornella*, 335 S.W.3d 545, 557 (Mo.App. S.D.2011). Her argument, however, ignores that the trial court did have a statutory basis for awarding Respondent attorney's fees. Section 452.355.1 provides, in relevant part:

> the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

In his counterclaim to Appellant's petition, Respondent alleged that Appellant failed to contribute half of their children's post-secondary education costs, as required by the January 18, 2007 modification judg-

ment. Section 452.355.1 grants the trial court the authority to award attorney's fees, even for services rendered and costs incurred after entry of the final judgment, and we will not disturb the trial court's award absent an abuse of discretion. *Groenings v. Groenings*, 277 S.W.3d 270, 279–80 (Mo.App. E.D.2008). An abuse of discretion occurs where the award was arbitrary, unreasonable, and against the logic of the circumstances as to shock the sense of justice. *Id.*

We presume an award of attorney's fees to be correct, and the party challenging the award on appeal bears the burden of proving otherwise. *Bryant v. Bryant*, 351 S.W.3d 681, 691 (Mo.App. E.D.2011). Appellant has not addressed the trial court's authority to award attorney's fees pursuant to section 452.355. To the extent that the trial court based its award of attorney's fees, as requested in Respondent's counterclaim, on Appellant's "actions [and] disregard of the judgment of the divorce court," it had the authority to do so. Moreover, a party's actions during the pendency of the litigation are especially considered when those fees were the result of the other party's conduct, as was the case here. *Cornella*, 335 S.W.3d at 557. We find no abuse of discretion. Appellant's fourth point is denied.

In her fifth point, Appellant contends:

> The trial court erred in sustaining [Respondent, Royce, and King's] motion for partial summary judgment as to Count 5 of [Appellant's] petition because Missouri law recognizes the cause of action for wrongful execution in that the executions filed by [Respondent, Royce, and King] were for the April 30, 2004, judg-

---

7. Although the trial court found that this was an equitable action to divide marital property which had not been divided by the trial court in the dissolution, "[w]e may affirm the judg-ment in a court-tried case if it is sustainable on any ground, not just the ground given." *Covert v. Fisher*, 151 S.W.3d 70, 73 (Mo.App. E.D.2004).

ment of divorce which did not award any monetary damages to [Respondent, Royce, and King] or form the basis for any execution against the property of [Appellant].

Appellant's point on appeal appears to claim that the executions were wrongful because the date listed under "judgment" on the writs of execution was the date of the dissolution and, on that date, there were no monetary damages. Not only does Appellant's point appear to state an incorrect principle of law,[8] the legal authority and argument provided by Appellant in no way supports her point.[9] Appellant is required to provide relevant legal authority in support of her argument and explain why, in the context of her case, the authority supports her claim of reversible error. *Moseley v. Grundy Cnty. Dist. R–V Sch.*, 319 S.W.3d 510, 513 (Mo.App. E.D. 2010). "If an appellant fails to support his or her claim of error beyond mere conclusions, the point is considered abandoned." *Id.* Point five is denied.

The judgment of the trial court is affirmed.

GARY W. LYNCH, P.J., and WILLIAM W. FRANCIS, JR., J., concur.

---

8. In this case, the monetary awards all stemmed from the dissolution and subsequent modifications. Appellant was well aware of the prior awards. *See Overton v. White*, 126 Mo.App. 363, 103 S.W. 512, 512 (St.L.D. 1907) (holding the execution sufficiently identified the judgment upon which it was based); *Stewart v. Severance*, 43 Mo. 322, 331 (1869) (finding one-day difference in the date of the judgment with the date listed on the execution to be immaterial); *Hunter v. Miller*, 36 Mo. 143, 147 (1865) (refusing to find an execution void for failing to list the amount of the debt where it was intended only for costs and "refer[ed] to the judgment with sufficient pre-cision so that no person can be mistaken about the judgment it is issued on"); *Montgomery v. Farley*, 5 Mo. 233, 234 (1838) (finding variance to be immaterial where judgment indicated the debt to be $88.01, but the execution indicated the debt to be $88.03).

9. In her brief argument section on this point, Appellant appears to argue that there exists an independent cause of action for wrongful execution. She fails to connect her claim concerning the incorrect date with a claim for "wrongful execution."