**Barbara Jo HOBEROCK, Respondent,**

v.

**Gregory Eugene HOBEROCK,
Appellant.**

**No. ED 84024.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 8, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 27, 2005.

Application for Transfer Denied
June 21, 2005.

Cary J. Mogerman, Clayton, MO, for appellant.

Justin C. Cordonnier and Jeffery T. McPherson, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Presiding Judge.

In this marital-dissolution case, the husband, Gregory E. Hoberock, appeals the trial court's judgment and decree of dissolution of his marriage to wife, Barbara J. Hoberock. Husband raises three points on appeal, challenging the trial court's child-support order, and its classification and valuation of a closely-held business, hth companies, inc.(HTH). We summarily deny Husband's claim regarding the trial court's valuation of the company and find that no jurisprudential purpose would be served by an exposition of the detailed facts and law.[1] The judgment as to the

---

1. The parties have been furnished with a memorandum, for their information only, set-

valuation of HTH is affirmed. Rule 84.16(b). As discussed in this opinion, we affirm the judgment as to the trial court's classification of HTH stock as marital property. We are unable to rule on Husband's claims of error regarding the trial court's child-support order, however, because of inconsistencies in the record. Accordingly, the judgment as to child support is reversed and the cause is remanded with directions.

### HTH Stock

Wife petitioned for a dissolution of marriage after twenty-three years of marriage. The parties have three children. Approximately six years after they were married, Husband and Wife started an insulation contracting business, HTH, which was incorporated in 1984. Upon incorporation there were three shareholders, Wife and two other women, each of whom was issued 50 shares of stock. Approximately one year after incorporation, Husband and Wife decided to buy out the other two shareholders so that Wife would be the only shareholder. The company redeemed 50 shares from one shareholder as treasury stock and Wife purchased 50 shares from the other shareholder at book value, pursuant to a stock repurchasing agreement. After these transactions, Wife owned 100 shares and was HTH's sole shareholder.

Within months of forming HTH, it became Wife's full-time job, or as Wife described, in many instances it became "more than a full-time job." Wife's duties consisted of attending to all the administrative and financial matters of the company, and generally anything other than the solicitation and execution of contracts that were Husband's responsibilities. Initially, Wife was the president and treasurer of HTH. After the other two shareholders

were bought out, Wife also became secretary of the corporation. Over time, Wife's responsibilities increased. In May of 1999, Wife assumed the controller's duties, and shortly thereafter assumed the duties of the accounts-payable clerk and the payroll clerk after those employees left the company. Wife's responsibilities required long working hours, often until very late at night. She testified she rarely slept over four hours a night, and never took a week off of work for vacation.

After years of working to build the business, Wife came to the conclusion in the late spring or early summer of 1999 that she did not want to continue working at HTH. Wife knew that covering for three employees in addition to her own duties was more than she would be physically able to do for an extended period of time. The company was monopolizing Wife's life and, as a result, she was not able to see her children or attend their activities. Wife testified that she and Husband had already made the amount of money that they had set as their goal, and that she was tired of making personal and familial sacrifices for the business when it was no longer necessary to support the family. Husband and Wife discussed various options, including liquidating the company, but eventually decided to downsize the company, with the intent that Wife would not have to keep working full-time, if at all. Husband and Wife began to downsize the company but, because there was still a shortage of office staff, Wife continued to work long hours at the business. And Wife continued to do so, even after discovering, in August of 1999, that Husband was having an extramarital affair with a female employee of HTH. As Wife testified, she had made a commitment to see the business through its current crisis pe-

ting forth the reasons for our order.

riod and to keep the employees from losing their jobs, and that she intended to honor that commitment no matter how upset she was with Husband.

In August of 2000, Wife transferred her HTH shares into Husband's name. Before the transfer, Wife had two stock certificates in her name. Wife wrote "gifted to [Husband] ..." on both certificates and drew an "X" through the face of the certificates. The second page of the certificates indicated that the certificates were cancelled and replaced by a new certificate, Certificate Number 12. Wife then prepared the new certificate, for 100 shares, in Husband's name. Wife placed a post-it note on the certificate, on which she wrote "gifted." Wife placed the canceled certificates and a copy of the new certificate in the company's corporate record book, and then placed the new certificate in a safe-deposit box registered to both parties.

Various testimony was adduced at trial regarding explanations Wife gave for the transfer. After she transferred the stock into Husband's name, Wife advised both Husband and the HTH advisory board of her actions. Several members of the advisory board who, like Wife, are certified public accountants, asked about the tax consequences of the transfer. Wife's response was that there were no tax consequences because spousal gifts were not subject to a gift tax. The HTH vice president testified at trial that he had conversations with Wife in which Wife had stated that she had gifted the HTH stock to Husband. Husband testified that Wife told him that she was gifting the shares to him. Wife testified that when she transferred the stock from her name into Husband's name it was not her intent to give up ownership in the company or render the stock no longer marital property. She testified that the transfer was not intended to have any effect on the family assets, and that the only discussions regarding the transfer were in the tax context, and what the tax consequences would be of a transfer. As Wife explained, the plan was to have her withdraw from working at the company and to give Husband the authority to manage the operations on a day-to-day basis. Wife further explained that she believed that successful businesses were those where the owner is on the premises, that she did not believe in absentee ownership, and that she did not believe it would be in the best interest of the business for her to be an absentee owner. Wife thought it best that, if Husband was to be the person working at and in charge of the business, that he also be the owner of their family stock.

After the stock was transferred into Husband's name, Wife continued working at the company in the same capacities. As a new controller became trained, Wife's duties gradually lessened. Wife stopped going into the office on a regular basis in May of 2001, and continued to attend advisory board meetings until September of 2001.

Wife filed a petition for dissolution of marriage in December of 2001. Wife requested the court award the interest in HTH to Husband as marital property. Husband claimed the shares of HTH had been gifted to him and were therefore his separate property. The trial court found the stock to be marital property, and awarded 100% of the stock in HTH to Husband. After dividing the remaining marital real and personal property, the trial court ordered Husband to pay Wife $1,832,744.26 to equalize the property settlement between the parties. Husband now appeals.

■■■ The standard for reviewing a judgment of dissolution is the same for reviewing any court-tried action. *Malawey v. Malawey*, 137 S.W.3d 518, 522 (Mo.

App. E.D.2004). We must affirm the trial court's judgment unless there is no substantial evidence to support the decision, the judgment is against the weight of the evidence, or the trial court erroneously declares or applied the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989); *Bond v. Bond,* 77 S.W.3d 7, 10 (Mo.App. E.D.2002). We will not retry the case, but rather, we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's decision and disregard all contradictory evidence and inferences. *Malawey,* 137 S.W.3d at 522. We defer to the trial court's superior ability to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript. *Id.*

■ For his first point on appeal, Husband alleges the trial court erred in classifying 100 shares of HTH stock titled in Husband's name as marital property. Husband argues that Wife gifted the shares to him, and thus the shares are his separate property. Husband seeks reversal of the trial court's classification and remand for the trial court to reallocate the division of property.

■ Section 452.330.3 RSMo.2000 [2] states that all property acquired by either spouse during the marriage and prior to legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by one spouse in some form of co-ownership. The statutory presumption of marital property may be overcome by showing that the property was acquired by one of the methods excepted by the statute. Section 452.330.3. One such exception is property acquired by gift. Section 452.330.2(1). The party attacking the statutory presumption has the burden of showing the property claimed to be separate property falls within one of the enumerated exceptions. *In re Marriage of Johnson,* 856 S.W.2d 921, 924 (Mo.App. S.D.1993). To rebut the statutory presumption of marital property, the attacking party must show by clear and convincing evidence that "both parties intend that the property be excluded from their marital property." *Brady v. Brady,* 39 S.W.3d 557, 561 (Mo.App. E.D.2001) *quoting Moseley v. Moseley,* 795 S.W.2d 464, 467 (Mo.App. E.D.1990) and *Rogers v. Rogers,* 573 S.W.2d 425, 426 (Mo.App.1978).

Here, there is no dispute that the parties acquired the shares in Wife's name during the marriage, nor do the parties dispute that the shares were marital property during the time that they were titled in Wife's name. Wife testified that she retitled the stock in Husband's name because she no longer wanted to work at the company and wanted to give Husband the authority to manage the business on a day-to-day basis. Wife testified that, in transferring the stock from her name into Husband's name, it was not her intent to give up ownership in the company or render the stock no longer marital property. She further testified that it never occurred to her that the transfer would have any effect on the family assets. Husband makes note of the fact that Wife wrote "gifted" on the old and new stock certificates, and had used the term "gifted" in conversations with other another company official. Wife testified that the only discussions regarding the transfer were in the tax context, and what the tax consequences would be of a transfer. The trial court found that Wife had no intent to dispose of her marital interest in the company, and that she wrote the word "gifted" on the stock certificate because that term had special significance in Wife's accounting world—that the

---

**2.** All statutory references are to RSMo.2000.

word "gifted" was "a CPA's word." The trial court was free to accept Wife's testimony. Further, the fact that Husband was faithless makes it unlikely that he would be the natural object of Wife's bounty. The trial court's decision finding Wife had no intent to dispose of her marital interest in the company is supported by the evidence. Because Wife had no intent to dispose of her marital interest in the company, Husband failed to overcome the statutory presumption that the shares were marital property. The trial court did not err in classifying the shares as marital property. Point denied.

### Child Support

■ For his second point on appeal, Husband challenges the trial court's child-support order. In its judgment of dissolution of marriage, the trial court ordered Husband to pay child support in the amount of $5,663 per month. However, the parenting plan attached to the court's judgment and incorporated by reference into the judgment states that "[n]either party shall pay child support to the other." Continuing, the court states that "[e]ach of the parties has sufficient wherewithal to provide for the children's needs when the children are in his/her custody and, therefore, it is not necessary to order any child support." Because of these inconsistencies, we are unable to discern what the trial court decided on the issue of child support. Accordingly, the judgment as to child support is reversed and the cause is remanded for the trial court to clarify its judgment.

The judgment is affirmed in part and reversed in part, and the cause remanded.

LAWRENCE G. CRAHAN, J., and MARY K. HOFF, J., concur.