Jane Gerarda SLATTERY, Respondent,

v.

Brian Keith SLATTERY, Appellant.

No. ED 86184.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 10, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 9, 2006.

Susan K. Roach, Clayton, MO, for appellant.

Mary Ann Weems, St. Louis, MO, for respondent.

PER CURIAM.

Brian Slattery ("husband") appeals from the amended judgment of the trial court after a bench trial. Husband contends that the trial court abused its discretion in that a number of its findings and conclusions are not supported by the evidence, and that the actions of Jane Slattery ("wife") resulted in unnecessary costs for attorney's fees. Husband raises eight points on appeal. We summarily deny six of these claims and find that no jurisprudential purpose would be served by an exposition of the detailed facts and law.[1] Rule 84.16(b). We affirm in part and remand in part.

Viewed in the light most favorable to the judgment, the evidence is as follows. Husband and wife were married on October 30, 1981. During the course of the marriage, two children were born. Shannon was born on August 31, 1987. Ryan was born on November 2, 1992. Both husband and wife worked during the course of the marriage, though wife was not always employed and did not work full-time when employed. The marital income was supplemented by monetary gifts from husband's parents. In June 2003, husband and wife separated, and wife filed a petition to dissolve the marriage.

A bench trial was held on July 16, 2004. Wife, husband, and Ryan testified, and both parties introduced a number of exhibits, which included financial documents. Wife averred that husband behaved inappropriately with the children in a number of ways. She stated that husband gambled often on the weekends. Wife testified that he hit her on several occasions. During the course of the separation, husband gave wife only $270, though he continued to pay the mortgage, paid for the utilities for part of the period, and paid for certain expenses related to the children.

Husband left wife in charge of the family finances. He gave her his paycheck to deposit and told her how much cash he wanted or needed from each check. She paid the various bills using a joint checking account. Wife stated that husband is currently living in one of the homes owned by his parents, who are there about six months out of the year.

Wife admitted that she was terminated from a job for "sexual misconduct" with a fellow employee, but stated that she was not unfaithful to husband during the marriage. Wife testified that she took $13,500 from the joint checking account in December 2002, after husband's parents gave them $20,000 as a gift, with a view towards dissolving her marriage. She stated that she used approximately $3,000 to pay her lawyer, but that the rest was spent on the

1. The parties have been furnished with a memorandum, for their information only, setting forth the reasons for our decision pursuant to Rule 84.16(b).

costs of living, as husband only gave her $270 since the separation. Wife testified that husband has continued to pay the mortgage payments since the separation, but that after a time he ceased to pay the utility bills without giving her any warning, with the result that she and the children were in danger of having various utility services cut off. She estimated that there was approximately $65,000 in equity in the family home, the main marital asset, which she stated was not in good condition and worth about $85,000. Wife testified that after an order of protection expired, he forced his way into the family home, causing damage to the door. She stated that she has not spoken to husband since the separation, and that he gave no notice that he wanted to enter the home for any reason. She stated that both she and husband had discussed the dissolution of marriage with Ryan.

Ryan testified at the request of husband. He stated that his father had taken him to see an R-rated movie. Ryan testified that both parents said bad things about the other parent to him, calling each other names. He said that his father told him that his mother stole money. Ryan stated that both parents discussed the dissolution with him. Ryan testified that his father told him that he did not have to listen to his mother and that he could make his own decisions on matters such as visiting with his father. Ryan stated that his father told him that if he lived with him, then husband would not have to live with Ryan's grandparents.

Husband stated that wife was not fired from her job in May 2002 for sexual misconduct, but rather "[i]t was read as sexual behavior between two district employees on district property." He claimed that wife committed misconduct in handling the bank accounts by taking money without his consent, but admitted that she "was the only one that took care of the checks[.]" Husband stated on cross-examination that he left his payroll checks for wife to deposit at the bank with directions to get varying amounts of cash back. He admitted that their checking account was a joint checking account, and that the $20,000 check from his parents was made out to husband and wife. He conceded that he did not need her permission to withdraw money from that account, and that she did not need his permission to do so. He stated that even after wife took some $13,000 from the joint checking account in January 2003, he continued to have her handle his payroll checks.

Husband stated that after the restraining order had expired, he picked up two disposable cameras, got a friend, and they forced their way into the family home. He testified that they opened the screen door, pushed the side door in, proceeded to the kitchen, where the door was locked, opened the lock with a paper clip, and proceeded to the first floor of the house, and took pictures of the inside of the house.

Husband expressed the opinion that the family home was worth at least $125,000. He stated that he and wife owed a bit more that $20,000 on the house. He wanted the home sold and the proceeds divided unequally in his favor. He testified that since the separation, he has directly given wife only $270 for support, but also stated that he paid for a number of other expenses. Husband paid for Ryan's private school tuition in the period between the filing of the petition of the dissolution and the hearing. Both parties agreed that Ryan should attend private school.

Both parties filed their own Form 14s and submitted financial information. The trial court rejected the parties' Forms 14 and compiled its own Form 14, and made findings of fact and conclusions of law in

its judgment/decree of dissolution. Husband filed a motion to amend the judgment. The trial court subsequently issued an amended judgment/decree of dissolution setting forth its amended findings of fact and conclusions of law.

In its amended judgment, the trial court ordered that the marriage be dissolved. It determined that it is in Shannon's best interest that sole legal and physical custody of her be granted to wife, and Shannon participate in counseling to try to restore her relationship with her father. The trial court also determined that it is in Ryan's best interest that sole legal custody be awarded to wife, and that husband and wife be awarded joint physical custody with wife as the residential parent. The court ordered husband to pay wife $755 per month for child support for Shannon and Ryan. It found that husband owed wife $12,835 for child support, retroactive through December 20, 2004, and satisfied that debt by reducing the amount that wife would have owed husband in the division of marital property. Husband was ordered to continue to provide health insurance for the children. The trial court also awarded wife $750 per month as periodic, modifiable maintenance, having found that wife is capable of working full-time and making a gross monthly income of $1419.60.

The trial court also divided the marital property, awarding the family home to wife, and determining that the equity in the home was $60,000. In the property division the trial court ordered wife to pay husband $14,500, after having setoff $12,835 that the trial court determined that husband owed wife for retroactive child support. The trial court also divided the marital debt. It ordered husband to pay wife's attorney $5,000 as a portion of wife's legal fees, and to pay the GAL the

sum of $2,610 for her fees. Husband now appeals from that judgment.

 We review a judgment of dissolution as we review any court-tried case. *Hoberock v. Hoberock*, 164 S.W.3d 26, 30 (Mo.App.2005). This Court must affirm the judgment of the trial court unless there is no substantial evidence to support the decision, the judgment is against the weight of the evidence, or the trial court erroneously declares or misapplies the law. *Id.* We will not retry the case, but rather accept as true the evidence and reasonable inferences therefrom in the light most favorable to the decision of the trial court, and disregard all evidence and inferences to the contrary. *Id.* This Court defers to the superior ability of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript. *Id.*

 In order to facilitate our analysis, we will examine husband's seventh point relied on first. In this point on appeal, husband avers that the trial court erred by abusing its discretion in determining that husband was in arrears on child support payments in that the evidence does not support that determination.

 The purpose of child support is to provide for the children's specific needs. *In re Marriage of Gerhard*, 985 S.W.2d 927, 935 (Mo.App.1999). The trial court has discretion to order retroactive support dating back to the filing of the petition for dissolution. Section 452.340.1 RSMo (2000)[2]; *Malawey v. Malawey*, 137 S.W.3d 518, 525–26 (Mo.App.2004). Retroactive child support need not be specifically prayed for in the petition, provided that the award is consistent with the substantive allegations of the petition, is requested on the record, and is supported by the

---

2. All further statutory citations are to RSMo (2000) unless noted otherwise.

evidence. *Gerhard,* 985 S.W.2d at 935. It is the trial court's function to balance the equities in determining if a party is entitled to retroactive child support, and this Court will not substitute its judgment for that of the trial court. *Malawey,* 137 S.W.3d at 526. Among the relevant factors under section 452.240.1 to be considered by the trial court are the following:

> (1) The financial needs and resources of the child; (2) The financial resources and needs of the parents; (3) The standard of living the child would have enjoyed had the marriage not been dissolved; (4) The physical and emotional condition of the child, and the child's educational needs; (5) The child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and (6) The reasonable work-related child care expenses of each parent.

In addition, the trial court should consider whether the non-custodial parent contributed to the support of the children during the period prior to the dissolution. *Malawey,* 137 S.W.3d at 526.

Father made the mortgage payments and some of the utility payments, paid for health insurance for the children, and paid for the private school tuition for Ryan, but did not otherwise provide child support after the filing of the petition of dissolution. There was substantial evidence to support the trial court's finding that mother had to expend marital assets to provide for the children and herself between June 2003 and December 2004. The trial court did not abuse its discretion in awarding retroactive child support to wife.

■ However, the trial court did err in its calculations of that retroactive child support. The trial court's retroactive child support award to mother of $12,835 is the equivalent of seventeen months of child support. This would not be an issue, but as husband contends, the undisputed evidence in the record indicates that he paid the private school tuition, which is included in the trial court's Form 14 calculations, for at least part of the period between the filing of the petition for dissolution and the December 20, 2004 judgment.[3] In her brief on this issue, wife does not deny that husband made such tuition payments. Accordingly, the trial court should have given husband due credit for those payments in calculating the amount of retroactive child support, and erred in not doing so. Point sustained in part.

■ In his fourth point relied on, husband asserts that the trial court abused its discretion in its valuation and distribution of marital property and marital debt in that the valuation and distribution disproportionately favored wife and was not supported by the evidence.

■ A trial court divides marital property in the exercise of its sound discretion. *In re Marriage of Denton,* 169 S.W.3d 604, 606 (Mo.App.2005). We review the trial court's ruling on property division for compliance with *Murphy v. Carron,* 536 S.W.2d 30 *(*Mo.1976) and for abuse of discretion. *Id.* The trial court abuses its discretion only if its decree is so unreasonable or arbitrary that it reflects indifference and a lack of proper judicial consideration. *Id.* Appellate courts will interfere with the distribution of marital property only if the division of the marital property is so heavily and unduly weighted

---

3. The record indicates that husband paid the private school tuition through the time of the hearing, July 2004, and is silent regarding the period between the hearing and the December 2004 judgment.

in favor of one party that it amounts to an abuse of discretion. *Id.* at 609. Marital property does not need to be equally divided, but rather the division must be equitable and fair under the circumstances of the case. *Id.;* section 452.330.1. The owner of property is competent to testify regarding its value in a dissolution of marriage proceeding, and the trial court is free to accept or reject such testimony. *Denton,* 169 S.W.3d at 609. Wife and husband gave conflicting testimony regarding the value of the family home, which was the major marital property.[4]

The distribution of property in a dissolution of marriage proceeding is governed by section 452.330.1. That statute requires the trial court to divide the marital property and marital debt "in such proportions as the court deems just after considering all relevant factors[.]" It goes on to list a non-exclusive list of relevant factors that the court should consider.[5]

The trial court in this case specifically declared that it made its division of property order pursuant to the guidelines set forth in section 452.330.1. Nothing in the record indicates that the trial court failed to consider these factors or misapplied them in making the property distribution. Wife has sole legal and physical custody of Shannon, and sole legal custody and primary custody of Ryan. The trial court made findings regarding the conduct of husband and wife, and regarding the economic circumstances of both spouses.

Wife received the family home, for which the trial court set a valuation more in accord with wife's testimony than husband's, some of the personal property, and had to pay husband $14,500. This included setting off the amount that the trial court determined that husband owed wife for retroactive child support by reducing what wife would have otherwise had to pay to husband in the property distribution. While somewhat disproportionate, the property division is not inequitable or unfair, and the trial court did not abuse its discretion in valuing or dividing the marital property. However, as we discussed in our analysis of husband's seventh point relied, the trial court awarded an incorrect amount of retroactive child support. The trial court used the amount of retroactive child support in determining an offsetting credit to wife in the distribution of the marital property. The trial court erred in calculating that credit to wife. Point sustained in part.

The judgment is affirmed as to the awards of custody, child support, attorney's fees, and payment of the balance of the guardian ad litem fees. As to the award of retroactive child support and the proper credit related to that support in the distribution of marital property, we remand for the receipt of additional evidence concerning husband's payment of tuition between the filing of the petition for dissolution in June 2003 and the December 20,

---

4. Although husband purportedly had the family home appraised, this appraisal does not appear to be in the record.

5. The non-exclusive list of statutory factors that the shall consider includes:

(1) The economic circumstances of each spouse at the time of the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of the children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

2004 judgment, and the determination of the amount of retroactive child support and the offsetting credit to wife in the distribution of marital property. In all other respects, the judgment is affirmed.