

# In the Missouri Court of Appeals
## Eastern District

### SOUTHERN DIVISION

| | | |
|---|---|---|
| LADONNA S. LYNCH, | ) | No. ED107455 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Cape Girardeau County |
| vs. | ) | |
| | ) | Honorable Craig D. Brewer |
| PAUL C. LYNCH, | ) | |
| | ) | |
| Appellant. | ) | Filed:  January 7, 2020 |

### Introduction

Paul Lynch ("Father") appeals the trial court's judgment dissolving his marriage to LaDonna Lynch ("Mother").  Father claims seven points on appeal due to errors in the judgment dissolving marriage ("Original Judgment") as amended by a second judgment ("Amended Judgment"), which addressed the parties' post-judgment motions.

First, Father claims the trial court erred in denying him joint legal custody of the three minor children.  Father argues: he had a long career in education; there was no evidence of neglect or abuse; the court misused the eight-factor evaluation; he would be paying for 70% of numerous aspects of the children's lives with no control or legal custody; and he and Mother shared beliefs on how to raise the children.  Mother claims she and Father have problems communicating and argues the trial court correctly made its finding for custody considering all of

the factors involved in determining the best interests of the children. Father failed to show the trial court erred in its custody determination.

Second, Father claims the trial court erred in calculating the amount of child support. Father argues the trial court failed to calculate the correct child support amount because it did not use the correct amounts for Mother's monthly gross income, the health insurance costs, or the credit Father was owed for overnight visitation. Mother responds the trial court adequately calculated these figures. We find the trial court made errors in calculating the presumed child support amount. We remand for the trial court to recalculate child support in accordance with this opinion and to reconsider if the correct presumed child support amount is just and appropriate.

Third, Father claims the trial court erred in ordering payment of child support retroactively. Father argues Mother did not request retroactive child support and the award was not supported by the evidence before the trial court. Mother counters the trial court was able to award retroactive child support because there was evidence of nonsupport by Father during the time in question and Mother was not required to request it. We remand for re-calculation of retroactive child support in accordance with this opinion.

Fourth and fifth, Father claims the trial court erred in ordering Father to pay 70% of the non-covered medical expenses and 70% of parochial school expenses for the minor children. Father claims the trial court arrived at 70% because of errors in calculating Mother's monthly income; therefore, he claims the errors in his second point require a recalculation of this proportion of expenses. Father argues he does not have any decision making ability to justify this high amount of medical expenses. Father also argues he does not have the financial ability to afford 70% of the parochial school expenses. Father argues he should not be forced to pay

2

this proportion without decision making ability and he should only be expected to pay for parochial school if the child does go to a parochial school. Mother counters the trial court did not abuse its discretion because it considered all relevant factors in its decision to order Father to pay 70% of the parochial school expenses and 70% of the non-covered medical expenses.

The trial court used the proportion of the parties' incomes to calculate the relative responsibility for non-covered medical expenses and parochial school tuition. If this proportion changes based on the newly completed child support calculations, the trial court must reconsider the 70% Father was ordered to pay using all relevant factors, including the parties' ability to pay.

Sixth, Father claims the trial court erred in improperly distributing the marital debts without appropriate findings. Father claims the distribution of debt, assumedly based on the comparison of income analysis argued in his second point, is unfairly weighing against him. Mother counters the trial court considered all relevant factors in its distribution of the marital debts and did not abuse its discretion. Last, Father claims the trial court erred in its valuation of the family home when determining the distribution of property. Father argues the evidence of the purchase was dubious, he did not waive his marital rights to the home, and he received too small of a share of the value of the home. Mother again counters the trial court considered all relevant factors in its valuation of the family home and did not abuse its discretion. Father has failed to show the trial court abused its discretion in its distribution of marital assets, debts, and the family home.

The calculation of the child support award is reversed. We remand with instruction to recalculate the proportion and amount of the parties' income and reconsider the effect of this calculation on child support and the division of expenses in accordance with the opinion.

<u>Factual and Procedural Background</u>[1]

Mother and Father married on September 12, 1992. They separated on October 14, 2014. Mother and Father had five children together, two of which were emancipated at the time of the judgment of dissolution. Father has been dating another woman since the separation. Mother claims Father had at least one affair during the marriage.

Mother filed a petition for dissolution of marriage on February 25, 2016. Father filed a counter-petition on March 9, 2016. Father claimed he voluntarily paid Mother approximately $46,000 between February 2016 and November 2017. Both Mother and Father filed a Civil Procedure Form No. 14 ("Form 14") proposing child support amounts to the trial court.

Mother and Father filed separate parenting plans for their three unemancipated children. Mother wanted sole legal and physical custody of all three unemancipated children while Father wanted joint legal custody of all three children and joint physical custody of the parties' youngest child (the "Youngest Child").

The parties generally agreed to the division of certain marital property, which included cars, certain household items, and some debt incurred by the parties. The parties requested the trial court separate and divide disputed marital/non-marital property which included: the marital equity in the parties' home; a growth fund; a bank account; a debt to the Knights of Columbus; and another unsecured debt. Mother sought 60% of the assets and 40% of the debts due to Father's marital misconduct.

The trial court held hearings on April 6 and June 18, 2018.

---

[1] We present facts in the light most favorable to the judgment of the trial court, deferring to its credibility determinations. *Mund v. Mund*, 7 S.W.3d 401 (Mo. banc 1999); *Slattery v. Slattery*, 185 S.W.3d 692, 696 (Mo. App. E.D. 2006).

*Original Judgment*

The trial court entered the Original Judgment on September 19, 2018. The trial court denied the custody arrangements proposed by the parties. Because the parents did not agree upon a parenting plan, the trial court had to make findings based on the eight factors under Section 452.375.2[2] and the public policy stated in Section 452.375.6 in determining these custody arrangements in the Original Judgment. The trial court granted Mother sole legal and physical custody of two of the three minor children. The trial court granted Mother sole legal custody but joint physical custody of the Youngest Child.

To support this custody arrangement, the trial court found Husband was less than cooperative in counseling sessions with Mother for the Youngest Child. Based on credible testimony from the counselor, Father seemed indifferent and frustrated with the process.

The trial court found Mother credibly testified regarding concerns about the parties' inability to communicate, Father's anger and aggression issues, and the effect of alcohol consumption on Father's decision. The trial court found Father "delegitimizes" the children's feelings, specifically, the Youngest Child. The trial court noted there is no evidence of physical abuse or neglect by either parent. But, the trial court found Father can be aggressive and quick to anger which affects the relationships between Father and the children. The trial court found the emotional health of the children, especially the Youngest Child, was not helped by the issues between Mother and Father and their inability to communicate or make decisions.

When the trial court granted sole legal custody of all three unemancipated children to Mother, it found Father voluntarily stepped out of the older unemancipated children's lives and Father "demonstrated a lack of empathy toward [the Youngest Child] and an inability to communicate effectively with [Mother]."

---

[2] All statutory references are to RSMo 2016, unless otherwise indicated.

The trial court completed its own Form 14 as required when denying the parties forms to determine how much child support Father must pay to Mother. The trial court used Mother's income from social security disability and an estimate of her income from a part-time job in calculating the presumed child support amount ("PCSA"), a prerequisite to a final child support award. The trial court input the health insurance expenses provided by Father in its Form 14. The trial court granted no credit for overnight visitation to Father in its Form 14. The trial court granted retroactive child support to Mother starting in November 2017, the month Father stopped voluntarily paying support.

The trial court was asked to consider transfers Mother made to herself from a Bancorp bank account ("Bancorp account"), one of Mother's non-marital accounts. Mother's brother was responsible for her finances and testified about Mother's fiscal history. A handwritten ledger, entered as an exhibit, showed money being transferred out of the Bancorp account at approximately $87,500 per year from 2010 to 2016. The trial court characterized the transfers as gifts received from non-marital funds held by Mother's family. This exhibit also showed deposits into Mother's account throughout the relevant time periods. Some substantial deposits were described as "capital distributions." Throughout this time period, the account itself also gained "interest" month-to-month, according to this handwritten ledger.

The trial court also ordered Father would pay 70% of all non-covered medical expenses and 70% of parochial school expenses. Mother was ordered to pay 30% of the non-covered medical and parochial school expenses.

The trial court separated the parties' marital and non-marital assets. It ruled the parties' home was partially marital and partially non-marital. The trial court set apart considerable non-

6

marital assets to Mother, including $50,000 of equity in the parties' home, as non-marital property.[3] Father received his retirement as non-marital property.

The trial court was asked to divide certain marital assets and debts. The disputed marital assets and debts were: the parties' home (valued at $215,000);[4] a growth fund (valued at approximately $10,000), a bank account (valued at approximately $500) a debt to the Knights of Columbus (approximately $10,000, outstanding), and another unsecured debt of the parties (approximately $11,000, outstanding).

The trial court used statutory factors to determine how to divide the disputed marital assets and debts. The trial court ordered Mother receive a greater portion of the equity due to Father's marital misconduct. The trial court ordered Mother to pay Father $80,000 as an equalization on the family home. The trial court awarded Father the growth fund and the bank account and ordered Father to pay the Knights of Columbus and the other unsecured debt. The agreed-upon division apportioned approximately $3,850 of marital property to Mother and approximately $16,000 to Father.[5]

*Amended Judgment*

On October 16, 2018, Father moved for a new trial or for reconsideration of the Original Judgment. On October 18, 2018, Mother moved to amend the Original Judgment and to re-open the case because evidence was uncovered after the case was submitted. On November 28, 2018, the trial court held a motion hearing during which counsel for both parties argued their post-judgment motions.

---

[3] The parties do not dispute the classification of Mother's non-marital property.
[4] The Original Judgment valued the home at $210,000 and $215,000. The Amended Judgment clarified the value was $215,000, and the entry of $210,000 in the Original Judgment was a clerical error.
[5] There is $10,000 of medical debt unexplained by the record, including debts to Barnes Jewish, Washington University School of Medicine, and Washington University Physicians.

7

On December 12, 2018, the trial court filed the Amended Judgment. The Amended Judgment did not modify custody arrangements. The trial court explained:

> [Father] asserts that, for purposes of the Form 14, [Mother]'s trust income and partnership distributions should have been considered. The Court disagrees. The Court finds that while these transfers have occurred from time to time, they were special requests by [Mother] to the caretaker *of her family's trust* and *not regular or mandatory distributions per special provision of the trust.* [Mother] obtained these transfers, which are clearly non-marital transfers, for the purpose of supporting herself and the children during the separation. The Court finds any such transfers to be gifts and not earnings by [Mother] due to some activity or employment by her or on her behalf. To address [Father]'s other points regarding child support, [Father]'s own Form 14 submitted into evidence included a cost for health insurance of $521.00 per month, not $563.74 as he alleges in his Motion. Further, his own Form 14 included no overnight credit and the presumed child support amount in [Father]'s Form 14 is $178.00 higher than the Court's Form 14 and the figure for child support that the Court ultimately used. [Father]'s arguments are not well taken. Moreover, the Court finds the division of non-covered medical expenses and private parochial school tuition to be appropriate based on the parties' proportionate share of adjusted gross monthly income as set forth on its Form 14. [Father] may now argue that the children need not attend parochial school but the evidence was clear that this was the desire and decision of the parties during the marriage, that the children are excelling in their respective parochial schools, that the parties do have the financial means to pay for parochial school, and that it would not be in the best interests of the children to now require the children to attend public school.

(emphasis added).

In the amended judgment, the trial court found the value of the family home was $265,000. It ordered $50,000 was a non-marital gift to Mother, so the marital equity was $215,000. Father was awarded $80,000 of this equity. The trial court allowed Mother to offset the $80,000 owed to Father for the equity equalization on the home against child support arrearage and portions of debts owed to Mother for non-covered medical expenses and parochial school expenses. The court also explained Father was ordered to pay 70% of certain debts, including the non-covered medical, not as a part of the division of marital equity, but rather as a part of the ruling on the proportion of non-covered medical expenses.

This appeal followed.

8

<u>Discussion</u>

*Standard of Review for Dissolution Cases*

Dissolution proceedings are suits of an "equitable nature," so we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Because the trial judge is in a better position to determine credibility of witnesses and weigh the evidence, we do not retry the case and accept as true the evidence and reasonable inferences therefrom in the light most favorable to the decision of the trial court, disregarding all evidence and inferences to the contrary. *Mund v. Mund*, 7 S.W.3d 401 (Mo. banc 1999); *Slattery v. Slattery*, 185 S.W.3d 692, 696 (Mo. App. E.D. 2006). "Weight of the evidence" refers not to the quantity or the amount of evidence but to its probative value. *K.M.M. v. K.E.W.*, 539 S.W.3d 722, 732 (Mo. App. E.D. 2017). "The burden of demonstrating error is on the party challenging the divorce decree." *Hernandez v. Hernandez*, 249 S.W.3d 885, 888 (Mo. App. W.D. 2008).

*Point I*

Father claims the trial court erred in denying him joint legal custody of the three minor children. Father argues: he had a long career in education; there was no evidence of neglect or abuse; the court misused the eight-factor evaluation; he would be paying for 70% of numerous aspects of the children's lives with no control or legal custody; and he and Mother shared beliefs on how to raise the children. Mother claims she and Father have problems communicating and argues the trial court correctly made its finding for custody considering all of the factors involving in determining the best interests of the children.

9

In a custody dispute, the trial court is charged with ordering the custody arrangement in the best interests of the children. *Wenger v. Wenger*, 876 S.W.2d 735, 743 (Mo. App. E.D. 1994) (internal citations omitted). A trial court's decision for custody arrangements is given greater-than-normal deference. *Id*. (internal citations omitted).

> [I]t is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions…so long as it is in the best interests of the child.

Section 452.375.4. If the parties do not agree to a custody arrangement, a trial court must use the public policy of Missouri and consider the factors in subsection 2 of section 452.375 to determine the arrangement in the best interests of the children, case by case. Section 452.375.6. These factors include, but are not limited to:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
(5) The child's adjustment to the child's home, school, and community;
(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence as defined in section 455.010 has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;
(7) The intention of either parent to relocate the principal residence of the child; and
(8) The wishes of a child as to the child's custodian. The fact that a parent sends his or her child or children to a home school, as defined in section 167.031, shall not be the sole factor that a court considers in determining custody of such child or children.

10

Section 452.375.2.

The trial court must include in its written findings a decision "based on the public policy in subsection 4 of [452.375] and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child." 452.375.6.

Father has the burden to show the trial court's determination was not in the best interests of the children. *Hernandez*, 249 S.W.3d at 888. The weight of the evidence is a matter of the probative value of the evidence. *K.M.M. v. K.E.W.*, 539 S.W.3d at 732. The trial court incorporated convincing evidence supporting its custody determination. Father argues he had a long career in education. He also argues there is no evidence of neglect or abuse. Father claims he and Mother can make decisions together. And he claims it is unfair to him that Mother gets to make all of the decisions while he pays for 70% of numerous expenses incurred by the children.

In its judgment, the trial court applied the factors and awarded sole legal custody to Mother, including analysis of each factor for the custody determinations. The trial court granted sole legal custody of all three unemancipated children to Mother, it found Father voluntarily stepped out of the older unemancipated children's lives and Father "demonstrated a lack of empathy toward [the Youngest Child] and an inability to communicate effectively with [Mother]." The trial court found the Youngest Child's counselor and Mother credible in their testimony about the emotional effect of Father's decisions and actions on the children. The trial court did not find Father was abusive or neglectful but did find Father was angry and aggressive and unwilling to participate to improve his relationship with the children.

Based on the findings of the trial court and the deference given to the trial court's factual determinations, we affirm the decision to grant Mother sole legal custody of the minor children

11

because Father's evidence does not suggest the trial court's custody determination was not in the best interests of the children.

*Point II*

Father claims the trial court erred in calculating the amount of child support he owed. Father argues the trial court failed to calculate the correct child support amount because it did not properly calculate Mother's monthly gross income, the health insurance costs, or the credit for overnight visitation. Mother responds the trial court adequately calculated these figures.

A trial court must calculate a just and appropriate child support award using the established two-step process. Section 452.340; *Woolridge v. Woolridge*, 915 S.W.2d 372, 380 (Mo. App. W.D. 1996). First, a trial court must correctly calculate the PCSA based on the application of *Woolridge* and the accompanying statutes and rules to the circumstances of the case. *Woolridge*, 915 S.W.2d at 380. Then the trial court must determine, based on a discretionary determination, if this presumed amount is just and appropriate before finalizing it as the child support award. *Id.*

A Form 14 must be used to calculate the correct PCSA. Rule 88.01;[6] *see* 452.340.8. Courts must follow Form 14 and the "Directions, Comments for use and examples for completion of Form No. 14" ("Directions and Comments") to input the correct amounts of income, expenses, and other relevant information to calculate a PCSA. *See* Rule 88.01; Form 14; *see also* Directions and Comments. If either or both parties provide a correctly completed Form 14, a trial court can adopt the proposed PCSA calculated. If neither party correctly calculated the PCSA, a trial court must do so on its own. *Woolridge*, 915 S.W.2d at 380.

Father claims Mother's gross income was miscalculated in Line 1 of the trial court's Form 14. Father claims the trial court should have considered income disbursed from one of

---

[6] All rule references are to Missouri Supreme Court Rules 2016, unless otherwise indicated.

Mother's bank accounts in the calculation of Mother's Line 1. Father argues Mother received trust income or partnership distributions which fall under the definition of income for Form 14. Father also claims the trial court used the wrong health insurance amount and failed to credit Father for time the Youngest Child spends with him on overnight visitation.

If we find an error in the calculation of the PCSA, we must either correct the error and recalculate the PCSA or remand for the trial court to recalculate the PCSA. *Schumert v. Dreyer*, 481 S.W.3d 885, 890 (Mo. App. E.D. 2016) (citing Rule 84.14 and *Elliott v. Elliott*, 920 S.W.2d 570, 579 (Mo. App. W.D. 1996)). Because the trial court will require more evidence to calculate a new PCSA, we remand to the trial court to complete a new Form 14. *See Schumert v. Dryer*, 481 S.W.3d at 890. Upon remand, the trial court can consider additional evidence and, within its own discretion, hold a hearing or allow new evidence to resolve factual disputes. *See id*. at 618-20. We find the trial court misapplied the law when calculating Mother's monthly income. We remand for the trial court to recalculate the PCSA in accordance with this opinion.

Line 3 of Form 14 uses both parties' gross monthly income found in Line 1, adjusted according to specified guidelines in Line 2. Form 14 then requires a calculation of the total amount of combined monthly income to determine the proportionate share of monthly income, found in Line 4 of Form 14.[7]

The Directions and Comments instruct what is included in this gross monthly income amount. "Gross income" under Line 1 includes interest, partnership distributions, and social security disability benefits due to a parent's disability. Directions and Comments, Line 1, Direction. Social security disability benefits received *on behalf of a child* are listed as an exclusion from a party's monthly gross income. "'Income' for purposes of computing the

---

[7] The trial court used this income proportion to order Father to pay 70% and Mother to pay 30% of non-covered medical expenses and parochial school expenses.

presumed child support amount consists of a financial benefit or money received by a parent that could have a positive impact on the parent's ability to support the parent's children."

The trial court entered $2,648.00 as Mother's gross monthly income in its Form 14. In the Original Judgment, the trial court explained it combined social security disability payments and part-time employment. In the Amended Judgment, the trial court responded to Father's claim the "trust income and partnership distributions should have been considered." The trial court found:

> [W]hile these transfers have occurred from time to time, they were special requests by [Mother] to **the caretaker of her family's trust** and not regular or mandatory distributions per special provision of the trust. [Mother] obtained these transfers, **which are clearly non-marital transfers**, for the purpose of supporting herself and the children during the separation. The Court finds any such transfers to be gifts and not earnings by [Mother] due to some activity or employment by her or on her behalf.

(emphasis added).

The trial court excluded the transfers from the Bancorp account without the substantial evidence necessary to determine if this money or the money deposited into the Bancorp account should have been included in Mother's income. The evidence before the trial court shows there were resources available to Mother not considered by the trial court. The trial court incorrectly described the distributions as trust income. Because there is no evidence before this court the distributions came as income from a trust, we do not consider Comment B under Line 1 "Trust Income" in the Direction and Comments.[8] The distributions appear to be transfers from the Bancorp account into another of Mother's bank accounts. Mother conceded at oral argument the transfers came from Mother's premarital assets. None of these assets are trusts. Because the

---

[8] Directions and Comments, Line 1, Comment A. Comments B through F under Line 1 include exceptions to these general rules of income subject to the trial court's discretion. The comments instruct trial courts to consider certain factors when deciding to include the following items in a party's monthly gross income: trust income; overtime compensation and secondary employment; bonuses; capital gains income; and retained earnings.

14

trial court improperly classified these as trust distributions, the Directions and Comments were erroneously applied.

Mother also conceded at oral argument she likely received income from the considerable assets she held at the time of dissolution. The exhibit is purportedly a ledger of Mother's Bancorp account showing deposits into the account, withdrawals by Mother out of the account, and gains of approximately $30,000 of interest. This interest from the nonmarital asset was not considered by the trial court in completing the Form 14. Interest must be included in income on a Form 14. Directions and Comments, Line 1, Direction. To the extent Mother's other disclosed nonmarital assets have been gaining interest or other income, the trial court must consider these resources in calculating the Form 14. Not only was the trial court's analysis of approximately $87,500 per year from 2010 to 2016 a misapplication of the Directions and Comments, but also the evidence before the trial court clearly showed interest was regularly received from the Bancorp account which had to be considered. *Id.* Partnership distributions are also required to be included in this Line 1 figure. *Id.* Because we lack information and evidence on the origin of the other deposits (which amount to nearly $1.5 million over six years), we find the trial court cannot apply the Directions of Form 14 without considering these resources. The trial court should consider all of the resources available to a parent when determining their child support obligation. *Fike v. Fike*, 509 S.W.3d 787, 797 (Mo. App. E.D. 2016). Failing to include this income readily apparent based on the evidence before the trial court is a misapplication of the Directions and Comments and the law on child support calculations. We find the amount used by the trial court was against the weight of the evidence given the information before it.

We remand to the trial court to reconsider what should be included in Line 1 of the Form 14 for Mother's monthly income because the evidence initially before trial court showed

resources covered by the Directions and Comments not considered by the trial court. We instruct the trial court to also allow any additional necessary discovery to determine whether the deposits into Mother's Bancorp account should be considered income and whether Mother received income as interest or distributions from the other assets held separately.

The Original Judgment awarded child support for three children, with contingency for two and one. Because the older children approach emancipation at this later date, we suggest the trial court incrementally calculate and order the PCSA for three children, two children, and one child, on three separate Form 14s.[9]

Father also claims he deserved credit for social security disability payments made to Mother for her own disability. We disagree. In both cases cited by Father, the parties paying support received social security disability payments for their own disability. *Wilk v. Wilk*, 781 S.W.2d 217, 223 (Mo. App. E.D. 1989); *Weaks v. Weaks*, 821 S.W.2d 503, 505 (Mo. banc 1991). Here, Mother, the party receiving the support, is the party receiving the social security disability. Therefore, this amount is rightfully considered in Form 14 as part of Mother's monthly gross income. *See* Directions and Comments, Line 1. The trial court correctly included the total social security disability in the monthly gross income amount.

Father next claims the trial court used the incorrect health insurance amount in calculating the Form 14. As we are remanding for recalculation of child support, we suggest the

---

[9] The Directions and Comments, Line 12, Comment B provides:

> As the number of children entitled to support increases, the amount payable for their support increases, but the increase per child is not at the same rate. Therefore, when awarding support for more than one child, a court or administrative agency shall not enter an order that apportions the support per capita; instead, the order shall be in a gross amount or ordered incrementally.
>
> When ordering support incrementally, the court or administrative agency shall complete a separate Form No. 14 for each combination of children that is the subject of the proceeding; i.e., the initial Form No. 14 shall be prepared for all children who are the subject of the proceeding; the second Form No. 14 shall be prepared for one child less than the initial Form No. 14; the third Form No. 14 shall be prepared for one child less than the second Form No. 14; etc.

16

trial court follow the Directions and Comments, Line 6c and use the actual amount paid for health insurance when available. We do not find error in the trial court's acceptance of an estimate of the health insurance costs. On remand, we find it appropriate to use the actual premium.

Father's final claim in Point II is the trial court failed to issue an adjustment to the child support amount based on credit under Line 11 for the time the parties' youngest child spent with Father. As the trial court is recalculating the PCSA using Form 14, we suggest the trial court reconsider this credit to Father. The Directions and Comments give the trial court discretion to grant more or less credit for overnight visitation depending on:

> the presence and amount of disparity between the incomes of the parties, giving more weight to those disparities in the parties' income of less than 20%; as well as considering which parent is responsible for the majority of the non-duplicated fixed expenditures, such as routine clothing costs, costs for extracurricular activities, school supplies, and any other similar non-duplicated fixed expenditures.

Directions and Comments, Line 11, Direction. Because the disparity in income is considered in awarding an overnight credit, we suggest the trial court pronounce the number of overnights Father has with the Youngest Child and reconsider the credit in Line 11, depending on any change in the parties' proportion of incomes.

Point II is granted, in part. The trial court erred when it classified Mother's bank transfers as trust assets and failed to consider Mother's income from her separate assets. This was a misapplication of the Directions and Comments to Form 14 under Line 1 and against the weight of the evidence provided to the trial court. We remand to the trial court to recalculate the PCSA and consider the appropriateness of the award in accordance with this opinion.

*Point III*

Father claims the trial court erred in ordering payment of child support retroactively. Father argues Mother did not request retroactive child support and the award was not supported by the evidence before the trial court. Mother counters the trial court was able to award retroactive child support because there was evidence of nonsupport by Father during the time in question and Mother was not required to request it.

"The purpose of child support is to provide for the children's specific needs." *Slattery*, 185 S.W.3d at 696. The trial court may order retroactive support dating to the filing of the petition for dissolution. Section 452.340.1 RSMo (2000); *See Slattery*, 185 S.W.3d at 696. Retroactive child support need not be specifically prayed for in the petition, provided that the award is consistent with the substantive allegations of the petition, is requested on the record, and is supported by the evidence. *Slattery*, 185 S.W.3d at 696-97 (internal citations omitted). It is the trial court's function to balance the equities in determining if a party is entitled to retroactive child support, and this Court will not substitute its judgment for that of the trial court. *Id*. at 697 (internal citations omitted). The trial court should consider:

> (1) The financial needs and resources of the child; (2) The financial resources and needs of the parents; (3) The standard of living the child would have enjoyed had the marriage not been dissolved; (4) The physical and emotional condition of the child, and the child's educational needs; (5) The child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and (6) The reasonable work-related child care expenses of each parent.

*Id*. In addition, the trial court should consider whether the non-custodial parent contributed to the support of the children during the period before the dissolution. *Id*.

Based on these factors and the deference to the trial court's findings, we do not find the trial court erred in granting retroactive child support. Point III is denied.

18

However, if the child support award is affected on remand, retroactive child support must be recalculated. The trial court is instructed to consider the law cited in this opinion and equity when ordering the new amount of retroactive child support. *Slattery*, 185 S.W.3d at 696-97. Should the trial court find Father paid more than his fair share of support from the time of filing the petition to the time retroactive child support begins, the trial court should consider this balance when assessing the factors under section 452.240.1.

Based on the re-calculation of the child support award, the trial court can grant retroactive child support if it so chooses as it was not error to do so in the Original Judgment, as explained above. This amount can go as far back as the date of the petition for dissolution and can consider giving Father credit for support voluntarily paid beyond the amount ordered for child support. *Id*. at 697.

*Point IV*

Father claims the trial court erred in ordering Father to pay 70% of the non-covered medical expenses. Section 454.603 allows the trial court to determine who will be responsible for the children's health insurance coverage. The trial court has discretion to order the party paying medical expenses to "be liable for all or a portion of the medical and dental expenses of the minor child[ren] that are not covered by the required health benefit coverage[.]" Section 454.603.5. The parties concede the trial court has the discretion to use the proportion from the Form 14.

In the Amended Judgment, the trial court states the number used for apportioning the non-covered medical expenses was the proportion of income on Form 14. Because this case has been remanded for a new calculation of Mother's monthly gross income for the applicable time period, we find the use of the old income proportion erroneous without further consideration in

19

accordance with this opinion. We remand for the trial court to calculate a new income proportion and reconsider this ruling.

## Point V

Father claims the trial court erred in ordering Father to pay 70% of parochial school expenses for the minor children. The trial court has the discretion to order the parties to share private or parochial school expenses. *Markowski v. Markowski*, 793 S.W.2d 908 (Mo. App. W.D. 1990). We make no finding whether the use of the income proportion is always appropriate for dividing parochial school expenses, but the parties do not dispute the trial court's use of the income proportion from the child support calculations to divide these expenses. We remand for the trial court to reconsider the division of the obligations of the parties based on the newly calculated income proportion and the financial position of the parties. *Id*. at 910. Father's ability to afford these parochial school expenses should be considered by the trial court. *Id*. The record before us and the trial court shows the transfers from Mother's Bancorp account have largely funded the children's school expenses.

## Points VI and VII

In his sixth point relied on, Father claims the trial court erred in improperly distributing the marital debts without appropriate findings. Father claims the distribution of debt, assumedly based on the comparison of income analysis argued in his second point, is unfairly weighing on him. Mother counters the trial court considered all relevant factors in its distribution of the marital debts and did not abuse its discretion.

In his seventh point relied on, Father claims the trial court erred in its valuation of the family home when determining the distribution of property. Father argues the evidence of the purchase was dubious, he did not waive his marital rights to the home, and he received too small

of a share of the value of the home. Father also claims the trial court should not have given Mother one year to pay the $80,000 equalization payment for the family home or to offset the equalization with child support arrearage.

The trial court is given broad discretion to divide marital property. *Thill v. Thill*, 26 S.W.3d 199, 208 (Mo. App. W.D. 2000). The division of property must be fair and equitable under the circumstances, but it need not be equal. *Moen v. Moen*, 140 S.W.3d 611, 613 (Mo. App. W.D. 2004). We will find error in the trial court's distribution only when the property division "is so 'heavily and duly weighted in favor of one party as to amount to an abuse of discretion.' " *Thill*, 26 S.W.3d at 208–09 (quoting *Allen v. Allen*, 961 S.W.2d 891, 893 (Mo. App. W.D. 1998)). "An abuse of discretion occurs only if the decree is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *Schubert v. Schubert*, 366 S.W.3d 55, 74 (Mo. App. E.D. 2012). "The appellate court presumes that the trial court's division of marital property is correct, and the party opposing the division has the burden of overcoming this presumption." *Moen*, 140 S.W.3d at 613.

Disputed Marital Accounts and Debts

> In a proceeding for dissolution of the marriage…, the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:
>> (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
>> (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
>> (3) The value of the nonmarital property set apart to each spouse;
>> (4) The conduct of the parties during the marriage; and
>> (5) Custodial arrangements for minor children.

Section 452.330.1.

"[T]he trial court may attach the amount of weight to each of these it deems appropriate, and these factors are not exclusive." *Seggelke*, 319 S.W.3d at 465 (quoting *Skaggs v. Skaggs*, 301 S.W.3d 72, 76 (Mo. App. S.D. 2009)).

The trial court addressed these five factors in the Original Judgment. The trial court found neither party was on sound financial ground. The trial court also found Mother certainly had less income than Father and Father presumably had some support from his live-in girlfriend. Based on these facts, the trial court found the first factor supported the 60% of the assets and 40% of the debts going to Mother.

The trial court found the second factor overall did not strongly favor either party's position. The trial court found the third factor weighed heavily for Father. The trial court found the fourth factor weighed heavily for Mother because Father had engaged in marital misconduct by committing at least one affair during the marriage. The court found little evidence supporting Father's claims of Mother's misconduct.

The trial court granted Mother sole legal and physical custody of the older children. For the Youngest Child, the trial court granted Mother sole legal custody but joint physical custody with a graduated visitation schedule for Father. Therefore, the trial court found Mother had more responsibility for the parties' children. Also, the trial court considered Mother's desire for the children to continue to attend parochial school. Therefore, it found the fifth factor supported 60% assets and 40% debts going to Mother.

This determination by the trial court does not apply to all of the marital debts. Certain debts were from the children's non-covered medical expenses, so the trial court divided them according to the proportion chosen for these expenses. In the Amended Judgment the trial court explained 70% of these debts were to be paid by Father because of the proportion chosen for

22

non-covered medical expenses, not the distribution of assets and debts. We refer to Point IV of this opinion and instruct the trial court to reconsider the division of these debts if the newly completed Form 14s result in a new proportion of income to be used for non-covered medical expenses.

Father claims the trial court erred and abused its discretion regarding the division of debts, specifically those debts involving non-covered medical expenses. Father only claims on appeal that 70% was too high of a proportion. Given the factual findings and the credibility determinations of the trial court, we do not find the division was an abuse of discretion.

### The Family Home

Section 452.330 governs the distribution of property in dissolution of marriage actions. *Workman v. Workman*, 293 S.W.3d 89, 100 (Mo. App. E.D. 2009) citing *Waldon v. Waldon*, 114 S.W.3d 428, 431 (Mo. App. E.D. 2003). A trial court "shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors." Section 452.330.1. The trial court must make specific findings on whether assets are marital or separate property before a just division of the marital property. *Workman*, 293 S.W.3d at 100 (citing *Waldon*, 114 S.W.3d at 431).

Property valuation "is a determination of fact by the trial court, to which we give great deference, [and n]o one formula or method of determining value is binding or conclusive." *Thill*, 26 S.W.3d at 203. Section 452.330.3 creates a presumption all property acquired during a marriage is marital unless a party can show "the property was acquired by a method listed in subsection 2 of this section." Subsection 2 of Section 452.330 states: "For purposes of sections

452.300 to 452.415 only, 'marital property' means all property acquired by either spouse subsequent to the marriage except…[p]roperty acquired by gift, bequest, devise, or descent[.]" Section 452.330.2(1).

Father estimated the family home was worth $265,000. Mother did not estimate the value of the home but valued the land the family home was built on at $50,000, which was given to Mother as a gift from her family. The trial court used the parties' estimates to value the family home. We give great deference to the trial court's valuation of the property. *See Thill*, 26 S.W.3d at 203. The parties do not dispute this valuation on appeal.

The trial court found $50,000 of equity in the family home was Mother's non-marital property because, even though it was received while the parties were married, it was a gift. Section 452.330.2 (2); *Workman*, 293 S.W.3d at 100. The trial court found $215,000 of equity was marital to be shared by the parties as the court deemed fit based on the appropriate factors in Section 452.330.1. The trial court awarded Father $80,000 from the value of the family home.

We do not retry the trial court's determination of the just proportions for the marital assets. *Slattery*, 185 S.W.3d at 696. We presume the finding of $80,000 of equity is correct because, even though it is not an equal division, the trial court must equitably and fairly set apart the marital property. *Moen*, 140 S.W.3d at 613. We will overrule this valuation and issuance only if it so heavily weighs in favor of Mother as to be arbitrary, unreasonable, and indicative of indifference by the trial court. *Thill*, 26 S.W.3d at 208–09; *Schubert v. Schubert*, 366 S.W.3d at 74. The factors the trial court must consider indicate the desirability of the family home being awarded to the parent with custody of the children; in this case, Mother. Section 452.330.1(1). The trial court could consider the fact Mother had custody of the children in granting an unequal

24

share of the family home to her. We do not find the division of assets weighs so heavily in favor of Mother as to show arbitrariness or indifference by the trial court.

Father cites no legal basis disputing the trial court's one year deadline to pay the $80,000 equalization payment or the ruling the amount owed can be offset by child support arrearage. "The burden of demonstrating error is on the party challenging the divorce decree." *Hernandez z*, 249 S.W.3d at 888 (Mo. App. W.D. 2008). Therefore, we find Father has not met the burden of showing trial court error on either issue before this court.

We deny Father's Points VI and VII.

## Conclusion

For the foregoing reasons, we remand for the trial court to complete a new Form 14 and recalculate and award a just and appropriate amount of child support. After this recalculation, the trial court should reconsider the child support to be awarded retroactively and any commensurate changes in the parties' obligations to the children's non-covered medical expenses or parochial school expenses as related to the relative income, given the complicated circumstances of this case.

_____
Philip M. Hess, Presiding Judge

Kurt S. Odenwald, J. and
Lisa P. Page, J. concur.